THE STATE FOR THE USE OF ROBERT GARRETT, APPELLANT, vs. WM. CRAWFORD AND JACOB EDGE, APPELLEES.

Where a judgment is obtained against an administrator *de bonis non* and a return on the execution issued on said judgment of *nulla bona*, and a suit then instituted against the administrator individually upon his bond and surety suggesting a devastavit, a plea by the administrator and his surety to the action on the judgment and administration bond, that after the obtaining of said judgment and before suit on the administrator's bond, that the administrator had made a written suggestion of the insolvency of the intestate's estate to the County Judge of the county from which the administration was granted, and had filed a schedule of all the estate of his intestate before said County Judge, and that said County Judge had, by his order that was unrevoked or amended, made a *pro rata* distribution among the creditors of said estate, and had awarded $330 as the *pro rata* share of said estate to said judgment, and that he brought said sum into court and tendered the same to the plaintiff. Upon demurrer to said plea, *Held :* That said demurrer should be over-

ruled, and the plaintiff refusing to plead over to' said plea judgment for the $330 confessed in said plea in favor of the plaintiff was proper.

Appeal from the Circuit Court for Leon county.

JUDGE McCLELLAN, of the First Circuit, sat in the place of Justice Raney, who was disqualified.

The action was commenced in Walton county, First Judicial Circuit, and transferred to Leon county, of the Second Judicial Circuit of Florida.

William Crawford, one of the appellees, on May 14, 1870, was appointed administrator *de bonis non* of Jesse McCullough, deceased, by the County Judge of Walton county, State of Florida, giving an administration bond with the usual conditions, with Jacob Edge and Albert Parish as sureties, said bond being in the sum of $3,000. Albert. Parish, one of the sureties, soon thereafter died, and is, therefore, not sued in this action.

It appears that after the said William Crawford was appointed administrator *de bonis non* of Jesse McCullough, deceased, Robert Garrett sued the said William Crawford, as administrator *de bonis non* of Jesse McCullough, deceased, in the Circuit Court of Walton county, State of Florida, and after pleas were filed to said action a judgment was rendered in said Circuit Court in favor of said Robert Garrett, and against the said William Crawford, as administrator *de bonis non* of Jesse McCullough, deceased. On August 23d, 1879, he recovered a judgment for $1,045.17 and costs; that execution issued upon this judgment against William Crawford as administrator *de bonis non* of Jesse McCullough, deceased, and was returned *nulla bona*. Whereupon Robert Garrett instituted this suit in Walton county Circuit Court against the said William Crawford

and Jacob Edge, upon the administration bond given by said Crawford as administrator of Jesse McCullough, deceased, to recover the amount of his unpaid judgment, recovered August 23, 1879, against said Crawford for $1,045.17 and costs.

To the declaration and amended declaration the said Crawford, on March 16, 1885, filed a plea setting forth the following facts :

1st. The judgment sued on by plaintiff was obtained in a suit commenced against him as administrator *de bonis non* of Jesse McCullough, deceased, June 7, 1871; that in said suit it was alleged that a copartnership had existed between the plaintiff, Garrett, and Jesse McCullough, deceased, and that growing out of this copartnership there was a considerable indebtedness due plaintiff; that by pleas he denied the copartnership and the indebtedness of his intestate at the time of his death in any amount or sum; that judgment was given against him upon these issues. 2d. That upon the recovery of said judgment he made a written suggestion of the insolvency of the estate of Jesse McCullough, his intestate, to the County Judge of Walton county, from whom letters of administration had been granted him. And that under the order of said County Judge he filed a true and perfect schedule of the amount of the assets in his hands, that thereupon said Judge made an order for the *pro rata* distribution of said estate among the creditors of said estate, in which order of distribution the sum of $330 was overdue and adjudged as the plaintiff's *pro rata* share of said estate, which order of distribution has never been reversed or appealed from and stands unrevoked. 3d. That on the day and date when the said sum of $330 was awarded and adjudged to said Garrett, and became due and payable from the said Crawford as administrator *de bonis non* of Jesse McCullough to said Garrett, he

was ready, and still is ready to pay said $330 to said Garrett, and that after the time when the said $330 became payable and before the commencement of this suit, to-wit: at Walton county about the 28th of April, 1880, he, the said Crawford, was ready and willing, and would have then and there tendered the said sum to said Garrett, but that said Garrett then and there refused to receive the same, and that he, the said Crawford, now brings the said sum of $330 so ready and offered to be tendered and paid to said Garrett into court, if he will accept the same.

To this plea the plaintiff demurred upon the ground that it was insufficient in law and constituted no defence to plaintiff's declaration. The court below overruled the demurrer, and the plaintiff declining to reply to said plea the court gave judgment for the plaintiff for the $330 paid into court. To these rulings the plaintiff excepted and prayed an appeal to this court.

*A. E. Maxwell* and *J. E. Yonge* for Appellant.

The demurrer to this plea rests in the rule of law, that a judgment against an administrator as such is an admission of assets. See 3d Williams on Executors, 1985 to 1988, (marg. page) and it is so conclusive that in an action on the judgment nothing more is needed to show a devastavit than to produce the judgment, the fi. fa. on it, and the Sheriff's return of *nulla bona.* Ib., 1985 and 1987. This is the common law rule. Where a different rule prevails in this country it is because the rule has been abrogated. The Mississippi cases are based on such abrogation. See 8 How., 539, in which it is held that a judgment against an administrator is not in that State an admission of assets, because "by our laws this rule of evidence is abolished." The defendants say the rule is also abolished in this State by statute. McClellan, 96, sec. 70. If such be the effect of that

statute it is only available by proper plea; and the plea here demurred to is not such. They might plead *nil debet* or not guilty of devastavit, but not that the estate has been declared insolvent, &c. They admit that this would not have been a good plea to the action on which the plaintiff's judgment was obtained. It could not therefore be a good plea under this statute which only authorizes such as would have been good in a case suggesting devastavit.

But we hold that the statute only applies to the case where the original action suggests a devastavit. The only plea to suit a case of deficiency of assets would be *plene administravit*. Where a plaintiff sues an administrator not suggesting devastavit it is because he proceeds on the assumption there are assets to satisfy any judgment he may get. And in such suit, if the administrator does not plead *plene administravit*, he thereby admits assets. The statute relied on does not change this. There is nothing in our law to relieve an administrator from pleading *plene administravit* in a proper case, and nothing to relieve him from the effects of a failure to file such plea. It is only when devastavit is chargeable that the statute helps him in action on his administration bond; but an admission of assets when there has been no charge of devastavit gives no footing for the operation of the statute.

The admission of assets is conclusive also against a plea of insolvency. No case but one have we seen to the contrary, except where the action was brought *after* the declaration of insolvency, which distinguishes this case under the current of authorities, as it does not appear, and is not a fact, that the present action was brought after the action of the County Court on Crawford's suggestion of insolvency. We call the attention of the court to this distinc-

tion, while examining authorities of defendants on this point.

*R. B. Hilton* and *Daniel Campbell* for Appellees.

JUDGE McCLELLAN delivered the opinion of the court :

This is a suit that was commenced by the appellant against appellees in the Circuit Court of Walton county, and transferred to Leon county, from which the appeal was taken to this court.

This suit was commenced by Garrett, the appellant, against William Crawford and Jacob Edge upon a judgment obtained by Garrett August 23d, 1879, against William Crawford, as administrator *de bonis non* of Jesse Mc-Cullough, deceased, for the sum of $1,045.17 obtained in the Circuit Court of Walton county. An execution issued upon the judgment and was returned *nulla bona.* And the present suit was instituted upon said judgment against William Crawford in his individual capacity and against Jacob Edge, one of Crawford's sureties upon his bond, as administrator *de bonis non* of Jesse McCullough, deceased, to recover the amount of the judgment obtained by Garrett against Crawford, as administrator *de bonis non* of Jesse McCullough, deceased.

To this suit Crawford, by leave of the court below, on March 16th, 1885, interposed a plea in bar of recovery against him and his surety, Edge. This plea set up—1st. That upon the recovery of said judgment he made a written suggestion of the insolvency of the estate of Jesse Mc-Cullough, his intestate, to the County Judge of Walton county, from whose court his letters of administration had issued; 2d. That under the order of said County Judge he filed a true and perfect schedule of the amount of assets in his hands; 3d. That thereupon said Judge made an order

for the *pro rata* distribution of said estate among the creditors of said estate in which order of distribution the sum of $330 was ordered and adjudged as the plaintiff's *pro rata* share of said estate, which order of distribution has never been reversed or appealed from and stands unrevoked ; 4th. That about the 28th day of April, 1880, after the said sum of $330 was awarded and adjudged to said Garrett, and before this suit was instituted, he, Crawford, was willing and ready to pay said sum to said Garrett, and would have done so but he refused to accept it ; 5th. That he is still ready and willing to pay said sum of $330 adjudged to said Garrett, and now brings the same into court to be tendered and paid to said Garrett when he will accept the same.

To this plea the plaintiff filed a general demurrer. The court below overruled the demurrer, and plaintiff refusing to reply to said plea the court below gave judgment for the plaintiff for $330, the amount tendered and paid into court under defendant's plea. The plaintiff from these rulings prayed and prosecuted his appeal to this court.

The only error assigned is the overruling the plaintiff's demurrer to the defendant's plea.

Was there error in this ruling ? We think not. The plea we think sets up facts that constitute a complete defence to the action. While the plea is one that grows out of the act of January 8, 1853, it is in the nature of a plea of *plene administravit præter.* This plea by the allegations it contains substantially complies with the act for winding up and distributing insolvent estates. There is a written suggestion of insolvency. There is a schedule of the amount of the assets of said estate, there is an adjudication of insolvency by the County Judge, and a *pro rata* distribution by the County Judge alleged in the plea as being made by the County Judge of the county from which the letters of administration were granted. The amount of $330 is

ascertained and adjudged to be paid Garrett upon his judgment by the County Judge of the proper county. This amount is paid into the court and tendered to the plaintiff, Garrett.

· The act of the Legislature, section 33, 1828, page 176, provides that " no security of an executor or administrator should be charged beyond the assets of the testator or intestate, by reason of any omission or mistake or false pleading of such executor or administrator." Section 30 of the act of 1828 provides that "upon a suit against an executor or administrator suggesting a *devastavit*, he shall be charged of his own estate unless he shows that he has fully administered or to the extent that he received assets and not properly administered." McC's. Dig., chap. 2, secs. 68, 69, p. 96.

The act of December 23, 1852, chap. 528, Laws of Florida, enacts that where a judgment is obtained against an executor or administrator, and upon the return of execution issued upon it that assets cannot be found in the possession of such executor or administrator, sufficient to pay and satisfy said execution in whole or part, that suit may be instituted in the name of the Governor of the State for the use of the person recovering such judgment, and |against such executor or administrator, their sureties or either of them upon the bond of such executor or administrator, to which action the defendants may plead any plea or pleas and in support thereof offer any evidence which would be legally advisable in any action against executors or administrators suggesting a *devastavit*.

These statutes are in *pari materia* and must be construed together. This rule will also apply to the statute of January 8, 1853, in regard to insolvent estates. An executor or administrator when sued as such before these acts could plead the general issue, the plea of *plene administravit* and

the plea of *plene administravit præter* where they were sued suggesting a *devastavit*.

The demurrer in this case admits the facts set up in the plea, and we think they are a complete answer to the plaintiff's action.

Judgment affirmed.

## OPINION

RENDERED TO HIS EXCELLENCY THE GOVERNOR IN THE YEAR 1887, IN THE MATTER OF THE EXECUTIVE COMMUNICATION OF MAY 9, 1887, CONCERNING THE POWER OF THE LEGISLATURE TO PASS BILLS.

The Justices of the Supreme Court are not authorized, under section 13, of Article IV, of the Constitution, to render an opinion to the Governor upon section 21, of Article III, of the Constitution, as to what character of bills, if any, the Legislature, at its session of 1887, is denied the power to pass, and which, when submitted to the Governor, it will be his duty for that reason to disapprove.

EXECUTIVE OFFICE,
TALLAHASSEE, FLA., May 9, 1887.
*To the Honorable the Justices of the Supreme Court of the State of Florida:*

If, in your judgment, it is a case in which your opinion can be properly required, I have the honor to ask your interpretation of section 21, of Article III, of the Constitution, as to what character of bills, if any, the Legislature, at its present session, is, by said section, denied the power to pass, and which, when submitted to me, it will be my duty, for that reason, to disapprove, though said bills may be otherwise unobjectionable.

Very respectfully,

E. A. PERRY.

SUPREME   COURT   ROOM,   STATE  OF  FLORIDA,  
      TALLAHASSEE, Fla., May 10, 1887.

HON.  EDWARD  A.  PERRY,

  *Governor of the State of Florida :*

  SIR : Your communication was  received  to-day and  has
been considered by us.

  The question asked by you  involves the  construction of
sec. 13, Art.  IV,  of  the  Constitution.    The section is as
follows:  " The  Governor  may, at  any  time,  require  the
opinion  of the Justices  of  the Supreme  Court  as to the in-
terpretation of  any  portion of  this  Constitution upon  any
question affecting his  executive powers  and  duties,  and  the
Justices shall render such opinion in writing."

  Unlike the Constitutions of  some  of  the other States  of
the Union, which authorize the Governor, or either branch
of  the  Legislature, to require the opinion  of  the  Justices
of  the Supreme  Court,  our Constitution restricts such right
to  the Governor alone.    It further restricts the right of the
Governor to require such  opinions on questions " affecting
his executive powers and  duties."

  Is  the opinion you desire one relating to your " executive
powers and duties ?"   The exact legal meaning of the word
" executive " has  been  many  times  authoritatively fixed
and defined.    It means a duty  appertaining to  the execu-
tion  of  the laws as they exist.    It  would follow  that the
law must be enacted according to all  the  terms prescribed
by  the  Constitution before  the  duty  of  executing  it can
exist.    Any duty imposed by the Constitution on the Gov-
ernor with reference  to  a  bill,  before  it  becomes a  law, is
not an executive  duty.

  The  enactment of  laws is a legislative duty, and  when
your Excellency is required by the Constitution to do  any
act which is an essential  pre-requisite  thereto, such  act is

legislative, and is performed by you as a part of the law-making power, and not as the law-executing power.

We are of the opinion that the question affects a legislative duty imposed by the Constitution, and believing that a compliance on our part with your request is unauthorized by the Constitution, we, with great respect for your excellency, beg to be excused from expressing opinions on the question submitted.

Very respectfully,

GEO. G. McWHORTER,

Chief Justice.