PER' CURIAM.
Plonorable LeRoy' Collins
Governor of Florida
Tallahassee, Florida
Sir:
We have your request of July 12, 1955, for opinion of the Justices óf this Court pursuant'to Section 13, Article IV of the F.S.A. Constitution as follows:
“To, the Honorable, the Chief Justice and the Justices of the Supreme Court of Florida
“Supreme Court Building
“Tallahassee, Florida
“Sirs:
“Section 3 of Article VII of the Florida Constitution provides as follows :
“ ‘§ 3. Apportionment. of representatives in senate and house of representatives — The Legislature that shall meet in regular session A. D. 1925> and those that shall meet every ■ ten. years thereafter, shall apportion the Representation in the Senate, and shall provide for thirty-eight (38) Senatorial Districts, such Districts to be as nearly equal in population as practicable, but no county shall be divided in making such apportionment, and each District shall have one Senator; and, at the same time, the Legislature shall also apportion the Representation in the House of Representatives, and shall allow three (3) Representatives to each of the' five most populous counties, and two (2) Representatives- to each of the next eighteen more populous -counties, and one Representative to each of- the- remaining counties of the-State -at the time of such apportionment. Should 'the Legislature fail to apportion the Representation in the-Senate and in the-House of Representatives, at any regular session of the-Legislature at any of the'times herein designated, it shall be the duty of-the Legislature or Legislatures succeeding such regular session of the Legisla--ture, either in special or regular session, -to apportion the Representation in the Senate and in-the House of Rep-; resentatives as herein provided. The preceding regular Federal or regular State Census, which ever ’ shall ■ have been taken nearest any apportionment-of Representatives in the Senate and in the House of Representatives, shall control in making any .such apportionment. In the event the Legislature shall fail to reapportion the representation in the Legislature as required by this amendment, the Governor shall (within thirty days after the adjournment of the regular session), call the Legislature together in extraordinary session to consider the question of reapportionment and such extraordinary, session of the Legislature is hereby rftandatorily required to reapportion the representation as required by this' *784 amendment before its adjournment (and such extraordinary session so called for reapportionment shall not be limited to expire at the end of twenty days or at all, until reapportionment is effected, and shall consider no business other than such reapportionment.)’
“Section 4 of Article VII of the Constitution provides, in part, as follows:
“ ‘Where any senatorial district is composed of two or more counties, the counties of which such district consists shall not be entirely separated by any county belonging to another district. * * * ’
“The Legislature of the State of Florida was convened in regular session, pursuant to Section 2 of Article III of the Constitution, on April S, 1955, and remained in such regular session until it adjourned sine die on June 3, 1955. The Legislature in this regular session failed to reapportion the representation in the Legislature in accordance with the commands of the first sentence of said Section 3 of Article VII. No bill dealing with such reapportionment was passed by both houses.
“In accordance with the last sentence of Section 3 of Article VII, forthwith on June 3, 1955, I issued my proclamation calling the Legislature into extraordinary session commencing at 2 p. m., June 6, 1955, to consider the question of reapportionment.
“The Legislature convened in accordance with this proclamation and passed House Bill 'No. 4 — X which was approved by me on June 18, 1955, and was delivered to the office of the Secretary of State on said date and has now been designated as Chapter 31378 of the Laws of Florida. This bill effected reapportionment of the House of Representatives in accordance with Section 3 of Article VII, but did not reapportion the Senate.
“Since the enactment of the measure last mentioned, the Legislature has continued in extraordinary session. Proceeding in conformity with Section 17 of Article III of the State Constitution the House of Representatives and the Senate have now passed House Bill 10-X, a copy of which is enclosed, and the measure in due course will be presented to me as required by Section 28 of Article III of the Constitution which provides as follows:
“ ‘Section 28. Every bill that may have passed the Legislature shall, before becoming a law, be presented to the Governor; if he approves it he shall sign it, but if not he shall return it with his objections to the House in which it originated, which House shall cause such objections to be entered upon its Journal, and proceed to reconsider it; if, after such reconsideration, it shall pass both Houses by a two-thirds vote of members present, which vote shall be entered on the Journal of each House, it shall become a law. If any bill shall not be returned within five days after it shall have been presented to the Governor, (Sunday excepted) the same shall be a law, in like manner as if he had signed it. If the Legislature, by its final adjournment prevent such action, such bill shall be a law, unless the Governor within twenty (20) days after the adjournment, shall file such bill, with his objections thereto, in the office of the Secretary of State, who shall lay the same before the Legislature at its next session, and if the same shall receive two-thirds of the votes present it shall become a law.’
“It is my view and firm conviction that House Bill No. 10-X fails to conform to the provisions of Section 3 of Article VII requiring the 38 Senatorial Districts of the State to be apportioned among the counties ‘as nearly equal in population as practicable.’ Some reapportionment progress would doubtless be achieved under House Bill 'No. 10-X, but I believe it is clear that such fails to meet the Constitutional mandate. For example, Manatee and Sarasota Counties — the former with a *785 population of 34,704, the latter with 28,827, according to the 1950 Census— are left in the same district, said district having a population of 63,531. Seminole and Brevard Counties — the former with 26,883, the latter with 23,-653 — are left in the same district, said district having a population of 50,536. On the other hand, the bill proposes: Sixteen districts, including four single county districts, with less population than Manatee County alone; eleven districts, including two single county districts, with less population than Sarasota County alone; nine districts, including two single county districts, with less population than Seminole County alone; and eight districts, including two single county districts, with less population than Brevard County alone.
“It has been publicly asserted and contended by some members of the Legislature that Section 28 of Article III is not applicable to legislative reapportionment provided for and required under Sections 3 and 4 of Article VII, and that under the provisions of Section 3 of Article VII a measure which passes both houses of the Legislature becomes law ipso facto and that executive approval or objection is unauthorized. If this is a correct interpretation of the Constitution, then it would become my duty to administratively deliver House Bill No. 10-X either directly to the Secretary of State or return it to the House in which it originated in order that it might be delivered to the Secretary of State. On the other hand, if Section 28 of Article III is operative, I regard it as my Constitutional duty to veto this measure.
“I, therefore, have the honor to request of you, pursuant to Section 13 of Article IV of the Constitution, your opinion in writing as to the interpretation of the mentioned portions of the Constitution on the question affecting the executive powers and duties I am authorized or required to perform with regard to disposition of House Bill No. 10-X.
“Respectfully,
“LeRoy Collins
“Governor”
In fine, the question you propound is whether or not an apportionment bill enacted .pursuant to Section 3, Article VII of the Constitution becomes a law ipso facto when passed by both Houses of the Legislature or should it be presented to the Governor for his consideration and approval or veto, as required by Section 28, Article III of the Constitution.
Your question falls within the contemplation of Section 13, Article IV of the Constitution. In so holding, we do not overlook Advisory Opinion to the Governor (Opinion on Governor’s Communication), 23 Fla. 297, 6 So. 925, wherein this Court declined to answer the question propounded by the Governor because it “affects a legislative duty imposed by the Constitution,” while under Section 13, Article IV of the Constitution the ' Justices are required to give their opinion only as to the interpretation of any portion of the Constitution upon any question affecting the executive powers and duties of the Governor.
The question propounded in 23 Fla. 297, 6 So. 925, had to do with the character of bills the Legislature was denied the right to pass pursuant to Section 21, Article III of the Constitution at the 1887 session, which if submitted to the Governor, it would be his duty to disapprove. To have catalogued such a list would have been impossible and then it would have served no useful purpose as changing times and conditions provoked grounds or bases for other bills so inhibited. It is true that paragraph four of the Act under consideration provides, inter alia, that “this section shall take effect on the sixth day of November, A. D. 1956, the same being the day of the next general election.” The only reason for the quoted provision was to remove any question as to hold-over senators continuing in office until their successors were elected and qualified. The *786 terms for which they were elected in 1952 could not be cut off so the Act was to all practical purposes in effect when it cleared the Legislature and was approved by the Governor. The pertinent holding in 23 Fla. 297, 6 So. 925, as Shepardized was that the Governor, in approving acts of the Leg-1 islature performs a part of the lawmaking power. Because of the marked difference in the questions and the source from which they derive, we do not think the case in 23 Fla. 297, 6 So. 925, is in point with or in any manner influences the point with which we are confronted here.
The primary question with which we are confronted has perplexed legislatures since the beginning, of representative govern-;1 ment. It. appears to be universally recognized that the duty imposed on the Legis- ' laturé.by the Constitution to apportion the; representation- in the House- arid Seriate" every ten years, beginning in 1925, ’can be exercised only by' each House enacting a ’ bill .that'becomes-a law 'when approved by ' the Governor or if for reasons contemplated by Section 28, Article III of the Constitution he shall disapprove it and re-., turn, it to the House where it originated with his objections, which..House shall cause such objections to b.e .spread on the . Journal and proceed to its reconsideration. If it shall then pass both Houses by a two-thirds vote and that vote entered on the Journal,'it shall- become a law despite the Governor’s objections.
Section 28, ■ Article ■ III of the Constitution contemplates that every bill passed by the Legislature take, this course , and we find nothing in Section 3 or 4 of Article VII of the Constitution. dealing with the question of apportionment indicating in the slightest that bills on that subject should take a different course.- Chapter 10242, Acts of 1925, Chapter 16781, Acts of 1935, and Chapter 23614, Acts of 1945, show conclusively that we have followed this pattern-in Florida,-each of said Acts having been submitted to and approved by the Governor. Other .states . have governed themselves by the same rule. See State ex rel. Broughton v. Zimmerman, 261 Wis. 398, 52 N.W.2d 903, where the question is discussed at length and many cases cited. Another factor that supports the rule is that Section 6, Article IV of the Constitution provides that the “Governor shall take care that the laws be faithfully executed.” In view of the clear provisions of the Constitution and the tradition established in this and other states, it would seem unnecessary to labor the question further.
You are, therefore, advised that apportionment bills enacted pursuant to Section 3, Article VII of the Constitution do not ipso facto become laws when passed by the Legislature but should be submitted to the Governor for his consideration and approval or rejection as contemplated by Section- 28, Article III of the Constitution. The legislative process requires the combined action of the Legislature and' the Governor.
Respectfully submitted
E.'HARRIS.DREW Chief Justice
GLENN TERRELL
ELWYN THOMAS
CAMPBELL THORNAL , Justices
July 13, 1955
Honorable LeRoy Collins
Governor of Florida
Tallahassee, Florida,
Sir:—
Four of my distinguished colleagues have advised that you have the executive power to veto a reapportionment measure adopted by both houses of the legislature at an extraordinary reapportionment session. They have based their views solely on the case of State ex rel. Broughton v. Zimmerman, 261 Wis. 398, 52 N.W.2d 903. No other authority is cited for the majority view. A careful reading of the cited case discloses that only thirteen lines of a long opinion deal with the- question in which you are interested, and not a single legal precedent is cited in those thirteen lines. In fact, the question in which you are interested was neither presented nor argued in that case, so that1 the thirteen-line statement in the opinion was, at most, dictum *787 of the Wisconsin, Court. The case dealt with other questions in which you are not interested.
The Constitution of-'Florida treats reapportionment as .a subject separate and apart from general legislation. Under our organic law,- it is “mandatory (1) that the Chief Executive, within thirty days. from the end of the regular session, call an extraordinary reapportionment session, if necessary; (2) that the Legislature shall reapportion the State .and consider no other matter at such extraordinary session; and (3) that the time for such extraordinary session is not limited to twenty days. No other subject is given 'such treatment by the Constitution of Florida, and reappor-tionmerit must therefore be recognized as a matter separate arid apart from general legislation. The Constitution of Wisconsin gives no such dignity to reapportiorim'ent, and therefore such reference as was made by the Wisconsin' court’to the subject was dealing with a constitution entirely different from the Constitution of Florida. Section 3 of Article VII of our Constitution, among other things,' provides “it shall be the duty of the Legislature * * * to apportion”. No mention is made of the Chief Executive. (Italics supplied.)
After carefully reading the Constitution of Florida, it is my opinion that it was the intention of the people of this state, in whom all sovereign power reposes, to delegate the power of apportionment exclusively to the legislature.. The triumvirate system of government by which the powers of the state-are'separated into three equal and coordinate, branches — legislative, executive, and judicial — has proved to be the best that mankind has ever devised, arid I am sure you will agree with me that no other portion of pur organic law should be cherished and guarded more zealously. The people granted the Chief Executive the right to invade,the legislative province to the extent of vetoing legislation, but the same sovereign people, in my opinion, made reapportionment ,a matter exclusively within the legislative province.
It is my sincere hope that, being the astute lawyer you are, you will personally read the cited decision and then will recognize the triumvirate system by leaving the matter of legislative reapportionment to. the legislative branch of the government. The triumvirate system is “more than a fading memory to-rest in the (state’s) archives. It has a yital place in our scheme of government” and should be cherished, nurtured and protected at every opportunity.
Respectfully submitted,
B; K. ROBERTS.