STATE EX REL. BOWMAN, Plaintiff, vs. DAMMANN, Secretary of State, Defendant.

*May 13—October 11, 1932.*

*George A. Bowman in pro. per., O. L. O'Boyle,* and *C. Stanley Perry,* all of Milwaukee, for the plaintiff.

For the defendant there were briefs by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

A brief was also filed by *Max Raskin,* city attorney of Milwaukee, as *amicus curiæ.*

The following opinions were filed June 20, 1932:

WICKHEM, J. The sole question here involved is whether ch. 27, Special Session Laws of 1931, is void as violative of secs. 2, 3, 4, and 5, art. IV, of the constitution of Wisconsin. The constitutional provisions involved are:

"Article IV, Section 2. The number of the members of the assembly shall never be less than fifty-four nor more

than one hundred. The senate shall consist of a number not more than one-third nor less than one-fourth of the number of the members of the assembly.

"Section 3. At their first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, excluding Indians not taxed, soldiers, and officers of the United States army and navy.

"Section 4. The members of the assembly shall be chosen biennially, by single districts, on the Tuesday succeeding the first Monday of November after the adoption of this amendment, by the qualified electors of the several districts, such districts to be bounded by county, precinct, town or ward lines, to consist of contiguous territory and be in as compact form as practicable.

"Section 5. The senators shall be elected by single districts of convenient contiguous territory, at the same time and in the same manner as members of the assembly are required to be chosen; and no assembly district shall be divided in the formation of a senate district. The senate districts shall be numbered in the regular series, and the senators shall be chosen alternately from the odd and even numbered districts. The senators elected or holding over at the time of the adoption of this amendment shall continue in office till their successors are duly elected and qualified; and after the adoption of this amendment all senators shall be chosen for the term of four years."

No objection is raised to the standing of plaintiff to bring this action, and the power of this court to review the constitutionality of a legislative reapportionment must be taken as settled by the cases of *State ex rel. Attorney General v. Cunningham,* 81 Wis. 440, 51 N. W. 724, and *State ex rel. Lamb v. Cunningham,* 83 Wis. 90, 53 N. W. 35.

The question is whether this act conforms with the requirements of the constitution, it being contended that ch. 27 is void because there is unnecessary inequality in the population of the assembly districts as created by the act.

At the outset it is possible to narrow our consideration of the problem, and to present the gist of the plaintiff's claim by stating that as to twelve counties no attack is made upon the present law, for the reason that the counties have more than enough population for one district, are not large enough for two districts, and cannot be added to an adjacent county for purposes of districting.

A second class of counties, ten in number, have slightly less than the population requirements but are so located that they cannot be combined with any contiguous county. A third class of counties, eleven in number, are sufficiently large for two districts but without a major fraction above 2 %. A fourth class of counties, of which Racine is the only representative, have enough population to be divided into three districts but without a major fraction above 3 %. A fifth class of counties, represented by Calumet and Ozaukee, are so small as not to be entitled to be a district but because of their location must constitute a district. A sixth class of counties, which are in combinations that cannot be disturbed because of the population of the counties and their geographical location, are Waushara and Green Lake, the former with .49 % and the latter with .47 % of the population required for a district. The same applies to Florence, Forest, and Oneida, which have, respectively, .13 %, .38 %, and .54 % of the population requirements, and which presently constitute one district and must on account of their location continue unchanged.

As to all the foregoing counties, no complaint is made of the reapportionment nor is there any contention that the situation could be improved.

We are thus brought to a consideration of the counties which are claimed to have been discriminated against by the 1931 apportionment. Milwaukee county, with a population of 725,263, and a population percentage of 24.68, is

claimed to be entitled to twenty-five districts, the unit for an assembly district being one per cent. Milwaukee county is allowed twenty districts under the act, or an alleged deprivation of five districts. Dane county, with a population of 112,737 and a population percentage of 3.84, is claimed upon the same basis to be entitled to four districts, whereas the act gives but three. Winnebago, with a population of 76,622 and a percentage of 2.61, is alleged to be entitled to three districts, but was given but two by the act. Rock county, with a population of 74,206 and a percentage of 2.52, was allowed two by the act; Eau Claire, with a population of 41,087 and a percentage of 1.40, is claimed to be entitled to two districts and was allowed but one. These five counties, according to the claims of the plaintiff, are entitled to thirty-seven districts, but were given twenty-eight districts, thereby being deprived of nine districts.

It is conceded that before any attack can be made based upon these deprivations, it must be determined that other counties are improperly districted by being given too great representation. Plaintiff's first attack is upon the provisions of the act which give to Grant county two districts. Grant county has a population of 38,469. Its percentage of population of the state is 1.31. It is claimed that the .31 % excess is not a major fraction, and is exceeded by the percentage of excess in Eau Claire, Rock, Marathon, Winnebago, Dane, Milwaukee, and Sheboygan. Hence the conclusion is that Grant county should have received only one assembly district. Door and Kewaunee counties are each given a district. Each has a major fraction of 1 %, which constitutes the basis of a district, Door having .62 % and Kewaunee .55 %. It is pointed out, however, that while each of these counties constitutes a major fraction, the major fraction is smaller in the case of Kewaunee than that of Milwaukee, Winnebago, and Dane; that the major frac-

tion in the case of Door county is smaller than the fraction of Milwaukee and Dane; that the two counties are contiguous and if joined into one district would have an overrun of only .17 %, which is smaller than that of Chippewa, Eau Claire, Jefferson, Wood, Brown, Dane, Marathon, Rock, Sheboygan, Winnebago, and Milwaukee. It is therefore concluded that Kewaunee and Door counties should be combined into one assembly district.

The same comment is made upon Crawford and Richland counties, each of which is given one district, each of which has less than the 1 % of population required for a district, each of which has a major fraction of this amount. The major fraction in the case of Crawford county is smaller than the major fraction of Milwaukee, Winnebago, and Dane counties, while that of Richland is smaller than Milwaukee and Dane counties. The counties are contiguous and if they had been combined would have had a surplus of .23 %, which is smaller than the surplus of eleven other counties.

The same comment applies to Iowa, which has a major fraction of .68, and Lafayette, which has a major fraction of .63 %. Each has one representative, but they are contiguous and it is claimed they should be combined into one district.

Juneau county, with a major fraction of .59 %, should, according to the contention of the plaintiff, be joined with Adams and Marquette, which have fractions of .27 and .32, respectively. At present Juneau is one district, and Adams and Marquette are combined into one district. The placing of three counties in one district would cut off one assembly district. The same comment applies to Jackson and Trempealeau, with major fractions of .56 and .81, respectively, and a total of 1.37 %. Pierce county, with .72 %, is at present one district. Pepin and Buffalo, with .25 and .52, respectively, constitute one district. It is contended that

these three counties should constitute one assembly district, which would give a total of 1.49 %.

It is also claimed that Ashland, Bayfield, Burnett, Iron, Price, Rusk, Sawyer, Taylor, Vilas, and Washburn, which have been arranged into seven districts, are clearly entitled to only five. The total population of these counties gives them a percentage of 4.59. Plaintiff suggests an arrangement into four districts by which the largest overrun would be .23 %.

It is also claimed that in arranging the districts in Dane county no attempt was made to equalize the districts; that the city of Madison, which has a population of nearly 58,000, was made into one district, while each of the others has approximately 27,000.

In considering whether the apportionment act is void, several things must be kept in mind at once. In the first place, the legislature was bound by constitutional mandate to avoid unnecessary inequalities in representation. However, it was recognized in the *Cunningham Cases* that the constitution contains other provisions which militate against absolute equality and which of necessity give to the legislature some freedom of action in adjusting the districts. All of these other constitutional requirements are plainly obstructions to precise equality. For example, the requirement that the districts be bounded by county, precinct, town, or ward lines; that they consist of contiguous territory; that they be in as compact form as practicable; that in forming a senatorial district no assembly district shall be divided,—are all limitations upon the ability of the legislature to accomplish anything like absolute or exact equality.

The obligation of the legislature with respect to reapportionment is stated in *State ex rel. Lamb v. Cunningham,* 83 Wis. 90 (53 N. W. 35), at p. 143, as follows:

"But there should be as close an approximation to exactness as possible, and this is the utmost limit for the exer-

cise of legislative discretion. If, as in this case, there is such a wide and bold departure from this constitutional rule that it cannot possibly be justified by the exercise of any judgment or discretion and that evinces an intention on the part of the legislature to utterly ignore and disregard the rule of the constitution in order to·promote some other object than a constitutional apportionment, then the conclusion is inevitable that the legislature did not use any judgment or discretion whatever. The above disparity in the number of inhabitants in the legislative districts is so great that it cannot be overlooked as mere careless discrepancies or slight errors in calculation. The differences are too material, great, and glaring, and deprive too many of the people of the state of all representation in the legislature, to be allowed to pass as mere errors of judgment. They bear upon their face the intrinsic evidence that no judgment or discretion was exercised, and that they were made intentionally and wilfully for some improper purpose, or for some private end, foreign to constitutional duty and obligation. It is not an 'apportionment' in any sense of the word. It is a direct and palpable violation of the constitution."

A reapportionment act should be approached by this court in the same manner and spirit as any other act the constitutionality of which is brought into question. Every presumption in favor of the validity of the act and the good faith and fairness of the legislature should be indulged in, and the act should be sustained unless "there is such a wide and bold departure from this constitutional rule that it can-not possibly be justified by the exercise of any judgment or discretion and that evidences an intention on the part of the legislature to' utterly annul and disregard the rule of the constitution in order to promote some other object than a constitutional apportionment." With the rule in mind, and in the spirit suggested, we proceed to the examination of this act.

In this connection plaintiff has submitted as a part of his very able brief several suggested methods of apportionment,

which it is claimed would achieve fairer results and greater equality of representation. An examination in detail of these proposals would unduly extend this opinion without performing any useful judicial service. It suffices to say that we have examined each of them carefully, and that we have found each of them subject to one objection or another. None of them eliminate inequality of representation, and in fact none of them materially reduce the inequality, considering the state as a whole. In general, they run counter to other constitutional provisions which the legislature must take into account, and which modify, to the extent that they must be followed, the ability and the obligation to achieve equality of representation.

It is of course obvious that plaintiff has no obligation, any more than this court has, to suggest a more appropriate scheme of apportionment than the legislature has adopted. However, an analysis of these various proposals does bring a realization of the difficulties which the legislature faces in accomplishing a result that will not be subject to criticism, and the existence of defects in a sufficient number of these counter proposals may ultimately lead to the conclusion that the legislature did not abuse its discretion, considering the various factors of which it was required to take account. After a careful study of the apportionment act, and after eliminating those counter proposals which seem definitely not to have been practical, we find the act subject to reasonable criticisms in three respects. Grant county, with a population of 38,469, and with a population percentage of 1.31 %, was given two assembly districts. Door and Kewaunee counties, the first with a population of 18,182, and the second with a population of 16,037, were each given an assembly district, whereas had they been combined, the combined district would have had a population of only 1.17 %. Grant county could have been given one district,

and Door and Kewaunee combined into one, without disturbing, so far as we are able to discover, any senatorial district, and without running counter to any constitutional provision unless, perhaps, in the case of Door and Kewaunee counties, the requirement that the territory be as compact as possible. It would seem to us that the result would have been fairer had this been done, and the districts thus saved assigned to Dane and Milwaukee counties, or even to Milwaukee county alone. It is virtually conceded in plaintiff's brief that had this been done there would be such a compliance with constitutional requirements as to justify a conclusion that a proper legislative discretion had been exercised, thus rendering the act invulnerable to attack.

Another criticism of the act by plaintiff that seems to have merit is the manner in which the districts in Dane county were divided. These districts were divided in such a way as to place Madison, with 58,000 population, in one district, and to divide the rest of the county, consisting of a total population of 54,000, into two districts. The court is thus presented with this question: Does the fact that in a legislative reapportionment involving seventy-one counties it appears that in three instances the legislature could have accomplished what appear to the court to be fairer results with respect to equality of representation, form a sufficient basis for concluding that the act constitutes such a "wide and bold departure" from the rule of the constitution that it cannot be justified by the exercise of legislative discretion, and that it evidences a legislative intention to disregard the constitution for ulterior motives? We are unable to arrive at such a conclusion. To do so requires that the presumption of the validity of the act and the legislative fairness be abandoned, and that a perfect result be attained before such a law can successfully pass the scrutiny of this court. It seems to us that this would impose upon the legislature su-

pervision of an intolerable sort, amounting to judicial usurpation of the legislative function with respect to the apportionment, and making vulnerable to attack almost any act that could be devised.

In viewing the fairness of the apportionment, the whole scheme of the statute must be taken into account, and not isolated instances where the legislature has fallen short of a perfect result. In the *Cunningham Cases* the court was dealing with clear and obvious gerrymanders, and the characteristics of the acts which subjected them to condemnation ran through and characterized them as a whole. We have concluded that no such condemnation can fairly be visited upon the present law. The fact that there has been so general a compliance with the constitutional requirements, seems to us to repel the inference that this act·is in any way comparable to the acts involved in these cases. While it is possible to see that in several particulars it could have been fairer and more satisfactory, we cannot say that this fact furnishes sufficient evidence of ulterior motives or intentional unfairness upon the part of the legislature. This court cannot ignore the fact that the enactment of such a law presents practical difficulties, arising from the necessity that it secure the approval of both houses of the legislature.

In *People ex rel. Carter v. Rice,* 135 N. Y. 473, 31 N. E. 921, 929, it was said:

"It can be stated at the outset that although the fairest that has been passed upon the subject, the act is not an ideal one. There are some inequalities which any one individual intrusted with the power might at once remedy, but which might be very hard to alter when brought under the review of one hundred and twenty-eight assemblymen and thirty-two senators. Local pride, commercial jealousies and rivalries, diverse interests among the people, together with a difference of views as to the true interests of the localities to be affected, all these things and many others might have

weight among the representatives upon the question of apportionment, so that in order to accomplish any result at all, compromise and conciliation would have to be exercised. Looking at the act as a result of such circumstances, and it seems clear that it cannot be said to be so far a violation of legislative discretion as to cause its complete overthrow by the courts."

For the foregoing reasons we have concluded that ch. 27 is valid and constitutional, and that the prayer of the complaint must be denied.

*By the Court.*—The prayer of the plaintiff for an injunction is denied, and the complaint dismissed.

FOWLER, J. I respectfully dissent from the disposition of the case made by the majority of the court. As application of my view would overturn an act of the legislature, I deem it proper to express briefly the reason for my dissent.

The opinion of the court states the facts fairly and accurately and I agree with the propositions of law stated therein. The main rule of the rules of law enumerated in the opinion other than that prohibiting the breaking of county, town, and ward lines, which is absolute, is that districts shall be formed "according to population." The New York court of appeals in *People ex rel. Carter v. Rice,* 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836, 851, which upheld a legislative apportionment, states that:

"The legislative purpose should be to make a district of an equal number of inhabitants [with those of other districts] *as nearly as may be;* and how far that may be carried out in actual practice must depend generally upon the integrity of the legislature. We do not intimate that in no case could the action of the legislature be reviewed by the courts. Cases may easily be imagined where the action of that body would be so gross a violation of the constitution that it could be seen that it had been entirely lost sight of and an intentional disregard of its commands both in the letter and in the spirit had been indulged in."

I consider this statement correct. In my opinion, how-ever, we need not resort to imagination for an example of such a gross violation of the constitutional provision as to equality of population in districts as to warrant interference by the courts. We have it here. And as indicating the grossness of the inequality we need only consider the situa-tion in which the redistricting act leaves Milwaukee county.

By the statement of facts in the majority opinion, it clearly appears that the unit of population for assembly dis-tricts entitles Milwaukee county to twenty-five assemblymen (as nearly as may be) instead of the twenty left to it by the act involved. That it might not be practical to allot that county twenty-five assemblymen or even twenty-four may readily be conceded. But I cannot concede that it is not en-tirely practical to allot it twenty-three. This might be done by allotting to Grant county one assemblyman instead of two; to Washburn and Ashland counties one instead of two; and to Kewaunee and Door counties one instead of two. So doing would leave these counties as fairly represented according to population as Milwaukee county would be, and as fairly as many other localities are under the present act. And Milwaukee county could be given the additional senator to which it is plainly entitled with only one change of senate districts in the present act. It so happened that at the time the act was passed there was a vacancy in the district com-posed of Green, Iowa, and Lafayette counties. Green county might have been attached to Rock county to comprise a district; Iowa to the district composed of Richland, Colum-bia, and Sauk counties; and Lafayette to the district includ-ing Grant, Crawford, and Vernon counties. This would have left a senator to allot to Milwaukee county and the population of these senate districts would have been less than that of the Dane county district and only slightly larger than several others. And this would not have placed any

hold-over senator out of his present district and would not have created any complication in renumbering the senate districts so as to avoid depriving any such senator of two years of his term by putting him into an even-numbered district whose members are to be elected at the coming 1932 election.

I do not suggest this as the best the legislature could have done, or as what it should have done, but to my mind it clearly shows that the legislature did not approach the goal of equality anywhere nearly as closely as it might easily and practically have done. Should Milwaukee county gain in population as much in the next ten years as it has in the past ten in comparison to the rest of the state, it will then no doubt, by application of the rule of equality, be entitled, as nearly as may be, to thirty assemblymen and ten senators. All would concede no doubt that a redistricting at that time that would leave it with its present quota of twenty assemblymen and seven senators would clearly be a violation of the equality provision of the constitution. Just where the courts should draw the line of constitutional departure from that provision cannot of course be precisely stated, but in my opinion the present act requires us to hold that it goes beyond that line.

I am authorized to state that Mr. Justice FRITZ and Mr. Justice FAIRCHILD concur in this opinion.

A motion for a rehearing was denied, with $25 costs, on October 11, 1932.