**STATE OF WISCONSIN, Mrs. Elfrieda Wilson, Dan Smith, Robert E. Smith, Lyle Link and Thomas Miglautsch, Plaintiffs,**

v.

**Robert C. ZIMMERMAN, Secretary of State of the State of Wisconsin, Defendant.**

**Civ. A. No. 3540.**

United States District Court
W. D. Wisconsin.

Aug. 14, 1962.

See also 205 F.Supp. 673.

John W. Reynolds, Atty. Gen., of Wisconsin, Roy G. Tulane, Asst. Atty. Gen., of Wisconsin, Madison, Wis., for plaintiffs.

Roger C. Minahan, Edward D. Cleveland, and Alfred A. Heon, Milwaukee, Wis., for defendants; Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., of counsel.

Before DUFFY, Circuit Judge, and STONE and GRUBB, District Judges.

DUFFY, Circuit Judge.

This suit was commenced by the State of Wisconsin asking equitable relief under the Constitution and laws of the United States to compel the defendant Zimmerman, Secretary of State, to refrain from conducting Wisconsin general elections for the Wisconsin state legislature under the Rosenberry Apportionment Act of 1951, and to refrain from conducting elections for members of Congress under Ch. 3, Stats. of 1959, as amended.

Thereafter, five individual citizens and voters of the State of Wisconsin, all residents of the County of Waukesha, were permitted to become parties plaintiff, and an amended complaint was filed. Attorney General John W. Reynolds has represented both the State of Wisconsin and the individual plaintiffs.

The duties of the defendant Secretary of State include the calling of elections for members of the legislature and members of the Congress of the United States, and also the initiation of administrative machinery to schedule and carry out such elections.

Defendant has filed various motions including motions to dismiss. Plaintiffs likewise have filed several motions. The Court held one session at Madison, Wisconsin, and another at Wausau, Wisconsin. Decisions were rendered on pending motions. It then became apparent that sessions of the Court would be required to receive evidence over a period of several days, and that difficulties would be encountered in having an early hearing due to previous commitments of the judges. Due to the approaching 1962 primary and general elections, time was of the essence. The Attorney General suggested the alternative of an appointment of a Special Master. The Court approved this suggestion.

On July 3, 1962, this Court appointed Honorable Emmert L. Wingert of Madison, Wisconsin, as Special Master, and he was directed to hold hearings and to make findings and recommendations. He held a pretrial conference on July 5, and hearings were held on July 10, 13, 19 and 20 at which oral and written evidence was received. The Special Master thereafter filed his report including findings of fact and conclusions of law, and on August 3, 1962, he filed a memorandum of opinion.

We hold this Court has jurisdiction of the subject matter; that the individual plaintiffs have standing to maintain this action; and that the amended complaint

herein states a justiciable cause of action. The recent decision of the United States Supreme Court in Baker v. Carr, 369 U.S. 186, 198, 237, 82 S.Ct. 691, 7 L.Ed.2d 663, is applicable and controlling.

The Wisconsin Constitution provides for thirty-three members of the state senate and one hundred members of the assembly, and limits their membership to that number. Wisconsin is entitled to ten members of the House of Representatives of the United States.

Sections 4 and 5 of Article IV of the Wisconsin Constitution provide:

"Section 4. The members of the assembly shall be chosen biennially, by single districts * * * by the qualified electors of the several districts, such districts to be bounded by county, precinct, town or ward lines, to consist of contiguous territory and be in as compact form as practicable.

"Section 5. The senators shall be elected by single districts of convenient contiguous territory, at the same time and in the same manner as members of the assembly are required to be chosen; and no assembly district shall be divided in the formation of a senate district. * * *"

The apportionment of Wisconsin's ten congressional districts which are now in effect was made by Chap. 28, Laws of 1931, based on the 1930 census. Several minor changes have since been made.

The apportionment of the seats in the senate and assembly now in effect were made by Chap. 728, Laws of 1951, which took effect January 1, 1954. This apportionment followed closely the plan recommended to the legislature by an interim committee of the legislative council. This committee often has been referred to as the Rosenberry Committee because its chairman was the late Chief Justice, Marvin Rosenberry.

Each member of the Wisconsin legislature, before assuming the duties of his office, swore to support the Constitution of the State of Wisconsin.[1] Section 3 of Article IV of the Wisconsin Constitution provides:

"Apportionment. At their first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, [excluding Indians not taxed, soldiers, and officers of the United States army and navy.]"[2]

In spite of this clear command of the Wisconsin Constitution, the state legislature has failed to comply with its constitutional duty to " * * * apportion and district anew the members of the senate and assembly, according to the number of inhabitants * * *."

The results of the 1960 census enumeration made by the United States were available to the members of the state legislature during the session commencing January 11, 1961. The legislature remained in session, with some recesses, until January 12, 1962.

Pursuant to action by the 1959 legislature, the legislative council appointed a bipartisan interim committee of senators, assemblymen and public members to present plans for apportionment to the 1961 legislature. It had nine meetings, concluding its work in April 1961. The committee developed plans for reapportionment of legislative and congressional districts, but these plans were not submitted to the full legislative council because that council was no longer meeting. Individual members of the committee introduced bills embodying the plans which the committee had suggested, but all failed of enactment.

During the 1961 legislative session, eight bills relating to apportionment of

1. Article IV, Sec. 28, Wisconsin Constitution.

2. The portion of the quoted paragraph which we have enclosed with brackets is of no importance in solving the questions before us and further reference thereto will be omitted.

legislative and congressional districts were introduced, but none of them passed the house in which the bill was introduced. A majority of the members of the senate and assembly in the 1961 session were and are members of the Republican party. The governor of the state was and is a member of the Democratic party.

On January 12, 1962, the legislature adopted a joint resolution which provided for an immediate adjournment until January 9, 1963 at 11:00 a. m., which is one hour before the time fixed by law for the commencement of the 1963 regular session of the legislature. It is obvious that the legislature intended to take no further action looking to apportionment prior to the convening of the 1963 session.

In an opinion handed down by this Court, 205 F.Supp. 673, 676 we stated:

" * * * The legislature has failed to 'apportion and district anew.' It still has that duty to perform. A much happier result would obtain if the legislature promptly convened on its own volition, or came into session at the call of the Governor, and enacted a fair and constitutional apportionment law."

We also stated that a federal court should be most reluctant to enter orders or directives in a case of this kind.

The legislature showed no signs of reconvening on its own volition. On June 13, 1962, the members of this Court addressed a letter to the Honorable Gaylord A. Nelson, Governor, suggesting that he call the Wisconsin legislature into special session for the purpose of enacting a fair and constitutional apportionment law. On June 15, 1962, Governor Nelson issued a proclamation convening the legislature in extraordinary session on June 18, 1962, to consider and act upon reapportionment of the senate, assembly and congressional districts.

Both houses of the legislature convened on June 18, 1962. On the same date, petitions were filed in each house by a majority of its members calling for a reassembling of its members on that date. Three bills on the subject of reapportionment were passed, vetoed by the Governor, and failed in passage over his veto. Bills 814–S and 817–S referred to congressional districts and Bill 815–S to senate and assembly districts. The session adjourned July 31, 1962 until one hour before the 1963 session of the legislature is scheduled to start.

According to the 1960 census, the population of Wisconsin, in that year, was 3,952,765. That census disclosed that substantial growth and shifts of population occurred since the 1950 census. If the legislative and congressional districts were equal in population, each of the assembly districts would have a population of 39,528; each of the thirty-three senatorial districts would have a population of 119,780; and each of the ten congressional districts would have a population of 395,276. In some of the charts and in the testimony such figures were referred to as the "ideal" [3] population per district.

Plaintiffs submitted a plan of reapportionment of the senate, assembly and congressional districts. It was based upon the plan developed by the committee of the legislative council, and was introduced in the legislature but was not passed. Plaintiffs asked the Special Master to recommend the plan to this Court as reasonable and practicable.

Under the present districting in Wisconsin, the smallest fifty-one assembly districts in population have 40% of the total population of the state; the smallest seventeen senate districts in population have 42.5% of the total state population. Thus, a majority of the members of the assembly represents 40% of the total population of the state, while a majority of the members of the senate represents 42.5% of the total population.

Although the average (ideal) assembly district would have a population of 39,-

---

3. The Special Master thinks the term "ideal" is misleading since it involves a controversial concept of policy.

528, the 1960 census revealed that the following were the seven largest in population. We set out in a table the names of these districts and the percentage of what an ideal district would be.

| | Population | Percentage of Ideal |
|---|---|---|
| Waukesha, 2d | 87,486 | 221.33 |
| Milwaukee, 19th | 83,769 | 211.93 |
| Milwaukee, 15th | 78,742 | 199.21 |
| Milwaukee, 9th | 75,879 | 191.97 |
| Waukesha, 1st | 70,763 | 179.02 |
| Milwaukee, 24th | 70,156 | 177.49 |
| Milwaukee, 11th | 69,756 | 176.48 |

In the bill passed by both houses of the legislature in the special session, provision was readily made for two additional assemblymen from Waukesha, but the leaders of the majority party were adamant in refusing to provide additional assemblymen for Milwaukee County. No attempt was made to conceal the reason. The majority of voters in Waukesha, based on past experience, was expected to vote Republican, and a majority in the Milwaukee area to vote Democratic.

Of course, the test is not whether a proposed apportionment would benefit the Republican party, the Democratic party or any other party. The command of the Wisconsin Constitution is clear. The test laid down by that document is " * * * according to the number of inhabitants."

■ The equal protection clause of the Fourteenth Amendment to the United States Constitution does not require that legislative and congressional districts be precisely equal in population. In Wisconsin, the requirements of Sections 4 and 5 of Article IV of the State Constitution, that assembly districts be bounded by county, town or ward lines and be in as compact form as practicable; that both assembly and senate districts consist of contiguous territory; and that no assembly district be divided by the formation of a senate district, all pre-vent an exact division of districts according to population. In State ex rel. Bowman v. Dammann, 209 Wis. 21, 27, 243 N.W. 481, 484, the Wisconsin Supreme Court stated that such constitutional provisions "are plainly obstructions to precise equality."

■ Under Baker v. Carr, supra, if an invidious discrimination exists, due to the failure of the Wisconsin legislature to perform its duty to redistrict following the 1960 census, it is the duty of this Court to intervene and to fashion a remedy. However, the Supreme Court gave us very little guidance as to just what constitutes an invidious discrimination in an apportionment suit. We may assume that a legislative districting closely comparable to that existing in Tennessee and which was before the court in Baker v. Carr, supra, would be an invidious discrimination.

For the sake of argument, we may consider that, taken as a whole, the legislative districting in Wisconsin is not as discriminatory as that which existed in Tennessee. Nevertheless, a great disparity in assembly and senate districts does exist, and it was the duty of the legislature to have remedied such situations by redistricting following the 1960 census.

■ We do not here decide the question of whether the disparities presently existing in senate, assembly and congressional districts in Wisconsin amount to invidious discrimination. We believe this case should be disposed of on the alternative basis suggested by the Special Master:

"(2) Be that as it may, in the circumstances now existing, including the difficulties which would be involved in effectuating relief at the 1962 primary and general election, the plaintiffs have not made a case for equitable relief at this time."

The primary election in Wisconsin is scheduled by law to be held on September 11, 1962, and the general election on November 6, 1962. The first day for

circulating nomination papers for the primary election was May 11, 1962. The last day for party candidates for legislative and congressional offices to file nomination papers was July 10, 1962. Candidates for the primary election were certified by the Secretary of State to county clerks on July 24, 1962.

The county clerk is the official charged with responsibility for printing ballots (except in Milwaukee County). He is required by law to let the contract for printing to the lowest responsible and qualified bidder within the county. In many counties there are no printing establishments with facilities for rapid printing. In such counties, two weeks must be allowed for printing of the ballots after the copy is delivered to the printer. Before the copy can thus be delivered, the names of the candidates must be rotated on the ballot, precinct by precinct.

Complications exist with reference to ballots to be cast by absentee voters, including members of the armed forces. Experience has shown that such ballots should be available three weeks before the September primary and three weeks before the general election. If the date for filing nomination papers is postponed beyond July 31, 1962, as has been suggested, the result might well be that many absentee voters would be deprived of their ballot.

Suggestion has been made that all candidates for the Wisconsin legislature and for members of Congress be required to run at large. In at least one case involving redistricting, such an order has been conditionally entered. Scholle v. Hare (Mich., 116 N.W.2d 350).

The conduct of a lawsuit involving novel questions of law such as we have here, and especially when we are operating in an uncharted area, inevitably consumes time. The defendant was, of course, entitled to an adequate opportunity to present his case. The periods of time customarily given for answer and reply were shortened in several instances. Counsel for both sides proceeded with diligence. This action was commenced within a reasonable time after the decision in Baker v. Carr, supra, and after the Wisconsin Supreme Court had again denied relief.

The framing of appropriate relief in this kind of a case, is a delicate job which can be done properly only after careful, time-consuming study. Furthermore, a mandate at this time that all candidates for the legislature and for congress should run at large, would be likely to create great confusion and many additional problems might be created.

This Court is sitting as a court of equity. It must balance the equities. As a practical matter, it is impossible at this late date to enter orders which would change the election dates of the primary and general elections, and also change all the statutory preliminary requirements The balance of the equities is against the plaintiffs, due largely to the time element involved.

There are presently pending in the state and federal courts in the various states, a number of cases involving legislative and congressional redistricting. At least one has already been appealed to the Supreme Court. We can anticipate that within the next few months, that Court will lay down additional guideposts for judicial action in this kind of a case.

It is to be hoped that the legislature, at its 1963 session, will carry out the duties imposed upon it by the Wisconsin Constitution, to-wit: " * * * [T]he legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants * * *." If the legislature neglects or refuses to make a fair, equitable and constitutional apportionment within a reasonable time after the 1963 legislature has been in session, then plaintiffs or others should not be prejudiced or prevented, by the decision in this case, from appealing to a federal court for redress.

An order will be entered herein dismissing this suit with costs but without prejudice to the filing of a suit for the

same or similar relief with respect to subsequent Wisconsin elections which the plaintiffs or others may commence after August 1, 1963 if, by that time, the State of Wisconsin has not been redistricted according to the provisions of the Constitution of the State of Wisconsin, in light of the federal census of 1960. The order also will fix the amount of the fees of the Special Master.