HINCKS vs. THE CITY OF MILWAUKEE.

CONSTITUTIONAL LAW: CHARTER *of Milwaukee:* LIABILITY OF CITY *for defective condition of highway.*

1. Sec. 1, ch. XX of the charter of Milwaukee (Laws of 1874, ch. 184), provides in substance that when any injury happens to persons or property in said city by reason of any defect or incumbrance of any street, sidewalk, etc., or other cause for which the city would otherwise be liable, if such defect, incumbrance or other cause is produced by the default of any person, such person shall be primarily liable, etc. *Held* valid, but not applicable where the defective condition of the highway is caused by the negligence of persons making *public* improvements *under contract with the city.*

2. Sec. 2 of the same chapter in terms exempts the city from any liability for injuries to persons or property incurred at any place therein where work is being done on streets or sidewalks by contractors with the board of public works, in consequence of the condition of such streets or sidewalks arising from the doing of such work; but it declares the contractors liable for such injuries caused by their negligence. . *Held,* invalid, as granting to said city a special immunity against a general rule of law to which other municipal corporations are subject. *Durkee v. Janesville,* 28 Wis., 464.

APPEAL from the County Court of *Milwaukee* County.

Action for an injury to the persons of the plaintiff and his wife from the upsetting of a carriage in which they were riding, caused by the defective and obstructed condition of a public street in said city. The essential averments of the complaint are stated in the opinion. A demurrer to the com-

plaint as not stating a cause of action, was overruled; and defendant appealed from the order.

*D. H. Johnson*, City Attorney, for the appellant, as to the validity of secs. 1 and 2, ch. 20 of the Milwaukee charter of 1874, argued substantially as follows: Admitting, for the purposes of this argument, that a law which is at once partial and arbitrary, limited by its terms to a single case or a small number of cases not distinguishable from other like cases, and having no perceivable foundation or motive other than malice, favoritism or caprice, is void (*Durkee v. Janesville*, 28 Wis., 464), still this court has never decided that a law not universal in its application is therefore void; but on the contrary it has, in very numerous cases, sustained legislation local and particular in its application. All that is required in such cases is, that the measure have some conceivable foundation in justice or sound policy to sustain it — some fact to distinguish the case or class of cases provided for from the mass of such cases. Thus, in *Whittaker v. Janesville*, 33 Wis., 90, the court sustained a law prohibiting an action to enjoin certain local taxes or assessments for mere irregularity, unless the amount justly due were first paid. The act was local and partial, relating only to a small class of taxes in a particular municipality; but it had an apparent motive sufficient to vest the legislative discretion. There is nothing in our constitution, or in the decisions of this court, denying the authority of the legislature to make different rules upon the most general subjects for different localities, where the different circumstances of places seem to justify such discrimination. Thus, any locality where no sheep are raised might be exempted from the operation of a dog law made for the benefit of wool-growers. No one doubts the validity of our laws providing for special assessments for the construction and maintenance of highways in cities, utterly unlike the means resorted to in country places for the accomplishment of the same object; or insists that regulations for constructing public

works, or licensing saloons, or paying the police, shall be the same in all cities. The provisions of our state constitution requiring uniformity in the rule of taxation and in the system of town and county government, exclude the idea of general uniformity. The amendments of 1872, cutting off certain classes of special laws, do not require uniformity in general laws; and city charters are expressly excepted from the prohibition of special legislation. Even in states where the constitutions require general laws to be uniform in their operation, the courts uniformly uphold the legislatures in making special laws exempting particular localities, particular classes of persons, and even particular persons, from the operation of the general laws. All that is required is, that there shall be some fact to justify the discrimination; of the sufficiency of the grounds for special legislation in such cases, the legislature must be the sole judge. Cooley on Con. Lim., 390; *People ex rel. Smith v. Judge*, etc., 17 Cal., 547, 552; *Brooks v. Hyde*, 37 id., 366, 375; *Ohio ex rel. Att'y Gen. v. Covington*, 29 Ohio St., 102. Now the liability of towns, cities and villages in this state for injuries occasioned by defects in the highways, is purely statutory. The right of action in such cases being given by statute, the legislature can take it away altogether, or can limit it to such cases as may seem to them just and proper, taking into account the different circumstances of different cases and places. In country places the highways are made and repaired by a species of general taxation. Individuals are not required or permitted to make or mend the public roads in front of their premises; and the work is never, or next to never, let by contract. In Milwaukee streets are made and maintained mainly by special assessments, upon abutting lots. But, before such an assessment, the lot-owner must be notified and have an opportunity to do the work himself. If he chooses to do it within the time prescribed, the city has no control over him or his work, beyond its ordinary police regulations. If he does not elect to do the work, it is let by contract to the low-

est responsible bidder. Even in the matter of ordinary repairs, no job involving an expense of more than two hundred dollars can be undertaken without the intervention of a contract. No contract can be let until after estimates, plans and specifications have been made, nor without the authority of the common council, nor until the owners of the adjoining property have been notified and allowed sufficient time to do the work for themselves, as before stated, nor until notice to bidders shall have been published a certain length of time. The contractor and his sureties must be approved as to their responsibility by the board of public works, and the contract must be countersigned by the comptroller in order to prevent unauthorized work from being let, and to keep the wards from overdrawing their funds. The contract must be approved as to its form and execution by the city attorney. It must contain most stringent provisions for the safety of the traveling public. In that respect, street contracts and sewer contracts are alike, and the sewer contract attached to the complaint in this action is a fair specimen. Similar regulations, differing in details but not in principle, exist as to bridges, sewers and other public works.

Is there not, then, a sufficient difference between the regulations for making and maintaining highways in Milwaukee and those in force in the rest of the state, to justify a different rule of liability for defects in highways? Not one in a thousand of all the local and particular regulations that have been upheld here and elsewhere, rests upon such an array of facts distinguishing the case provided for from the mass of like cases. The responsibility of the municipality for the condition of its ways grows out of its power to make and maintain its ways. Upon the power and the mode of its exercise depends, or may depend, the just measure of the responsibility. Whoever concedes to the legislature the authority to make provisions peculiar to Milwaukee, or any other city, for the construction and maintenance of its highways, must concede

the power to make rules peculiar to the same city, governing its liability for defects in its highways. The opposite doctrine must be, that every general statutory liability shall rest equally upon every citizen, and every corporation public and private, without regard to distinguishing circumstances or equities, beyond the power of the legislature to grant relief even in the form of ordinary charter provisions. If this be so, it follows that the legislature has no power to impose upon one municipality a liability not common to all other municipalities in like cases. Yet Milwaukee alone of all the municipalities of Wisconsin is liable to property owners for damages occasioned by a change in the grade of its streets — a liability as partial, as peculiar, and ten times as important, as the exemption from liability under consideration, and not resting upon any such array of distinguishing facts; but that liability has always been upheld by this court.

For the respondents, there was a brief by *Murphey, Goodwin & Mitchell*, and oral argument by *Mr. Murphey.* They contended, among other things, that sec. 2, ch. 20 of defendant's charter of 1874, purporting to exempt defendant from the common liability imposed by statute (secs. 120–126, ch. 19, R. S. 1858; sec. 1339, R. S. 1878) upon all counties, towns, cities and villages in the state for injuries caused by defective highways therein, was in contravention of sec. 9, art. II of the state constitution, and was also void as not within the proper scope of the legislative power. *Durkee v. Janesville*, 28 Wis., 464; *Whittaker v. Janesville*, 33 id., 90.

COLE, J. The complaint, in substance, charges that the plaintiff, while driving along Elizabeth street in the city of Milwaukee, in the evening of the 26th of October, 1877, with his wife, in a carriage, without fault or negligence on his part, was, with his wife, thrown from the carriage in which they were riding, and both injured, in consequence of the carriage being upset by a heap of gravel placed in the street. It is al-

leged that the gravel was deposited in the street by a contractor with the city, who was engaged in constructing a sewer; that the night was dark, and the gravel had been deposited in the street by the agents and servants of the city negligently and carelessly, and the same was negligently and carelessly left by the city without any guards, light, fence or other sign about the same to warn travelers upon the street of its presence. The contract under which the sewer was constructed, is annexed to and made a part of the complaint. It contains stipulations requiring the contractor, while in the performance of the work, to put up and maintain, in the night time, such barriers and lights as will effectually prevent the happening of any accident in consequence of the digging up, use, or occupying of the street for the purpose of making the improvement. According to the established doctrine of this court, the complaint states an actionable injury, unless the city is exonerated from liability in the premises by virtue of §§ 1 and 2, ch. 20 of the charter (see ch. 184, Laws of 1874), which reads as follows:

" Sec. 1. Whenever any injury shall happen to persons or property in the said city of Milwaukee, by reason of any defect or incumbrance of any street, sidewalk, alley or public ground, or from any other cause for which the said city would be liable, and such defect, incumbrance or other cause of such injury shall arise from or be produced by the wrong, default or negligence of any person or corporation, such person or corporation so guilty of such wrong, default or negligence, shall be primarily liable for all damages for such injury; and the said city shall not be liable therefor until after all legal remedies shall have been exhausted to collect such damages from such person or corporation.

" Sec. 2. The city of Milwaukee shall not be held liable for damages or injuries to persons or property incurred or happening at any place in the said city where work of any kind or nature is being done in or on streets or sidewalks, by con-

tractors under contract with the board of public works, in consequence of the condition of such streets or sidewalks, arising from the doing of such work. But if the contractors doing such work shall fail to keep up sufficient fences or protection guards to prevent damage or injury to persons or property, or shall be guilty of other negligence in doing such work, and if injury to persons or property occur by reason of such default of such contractors, such contractors shall be liable in an action by the person so injured."

By the first section it will be seen, that when the injury happens by reason of any defect or incumbrance in the street produced or caused by the wrong or negligence of any person or corporation, then such person or corporation is primarily liable, the city only being liable to make compensation after all legal remedies have been exhausted to collect the damages of the wrongdoer. We have no doubt of the validity of this provision of the charter; and did it appear that the case came within it, the complaint would surely be defective for not alleging that the remedy against the contractor had been exhausted. For while it may be true that the general rule of law is, that a party injured may, at his election, proceed against any one of several parties chargeable with the wrong, yet where one party is made responsible for the misconduct of another, by reason of some relation he holds to such other party, there would seem to be no injustice in requiring the injured party first to exhaust his remedy against the party really guilty of the misfeasance or default. Especially should this be so in respect to a municipal corporation which is made responsible for the negligent acts of others by virtue of its duty to keep its streets in a reasonably safe condition. But the learned counsel for the plaintiff contends that this section does not apply to a case where the defect or obstruction in the street is produced by a party constructing a sewer, or making some public improvement under a contract with the city; but was intended to include a case where the obstruction was placed in

the street by the owners of adjoining lots, while making some improvement for their own convenience or benefit, with which the city had nothing to do.  We are inclined to think that this construction of the section is the proper one, and that it has no application to the case stated in the complaint.  True, the language is quite broad; it speaks of a defect or other cause of injury, produced by the wrong, default or negligence "*of any person or corporation.*"  But these general words must, we think, be restricted to a case where the party causing the defect holds no contract relation with the city; as where the owner or occupant of the adjoining lot creates the nuisance, as in *Hundhausen v. Bond,* 36 Wis., 30, and where the city would otherwise be primarily liable to make compensation in the absence of such a provision.  Consequently, we hold that the complaint does not state a cause of action within the purview of section 1.

The second section undoubtedly extends to the case stated in the complaint, and, if valid, entirely exempts the city from all liability for the damages sustained by the plaintiff.  That section makes the contractor alone responsible for the injury occasioned by his negligent act.  The validity of this provision is challenged by the plaintiff's counsel, who insists that it is an attempt on the part of the legislature to grant a privilege or immunity to the city of Milwaukee against a general rule of law, while all other municipal corporations are left subject to its operation.  Such an enactment, he claims, is odious and unjust, and is distinctly condemned by the doctrine of this court in *Durkee v. Janesville,* 28 Wis., 464.  It seems to us this objection is well taken, and must prevail.  In the Durkee case, the charter of the city of Janesville declared that no costs should be recovered against the city in any action brought to set aside any tax assessment or tax deed, or to prevent the collection of taxes or assessments.  The charter in that particular was held void, both upon principles of constitutional law, and as being in violation of sec. 9, art. I of the bill of rights of our

Hincks vs. The City of Milwaukee.

state constitution. The opinion of Chief Justice Dixon in the case is so clear and exhaustive upon the question, that nothing further need be said upon the subject. The very able city attorney attempted to distinguish this from the Durkee case, but failed to do so to our satisfaction. It seems to us that the cases are not distinguishable in principle. If the provision of the charter of Janesville, which exempted the city from the payment of costs in that class of cases, without reference to the merits of the case, was partial, arbitrary and unjust, it seems to us that sec. 2 is of the same character. This court has uniformly held that municipal corporations, as well as towns, were required by statute to keep their streets and sidewalks in a reasonably safe condition for the use of the public, and were responsible in an action for an injury resulting from a failure to perform that duty. Whether that same liability is imposed upon a municipal corporation at common law, is a question we need not consider. In this state the liability has been founded upon statute. And we think the better rule of law is, that where a dangerous obstruction is negligently left in a traveled street, without proper lights or guards, by a contractor under the city who is engaged in constructing a sewer, or making other public improvements, the city is liable to a person injured thereby. Doubtless, it would be competent for the legislature to make the contractor in such a case primarily liable for injuries occasioned by his wrongful acts; but we do not think that the corporation can, by a special act, be exempted from all liability in the premises.

It follows from these views, that section 2, above cited, affords no defense to this action. We think the order of the county court overruling the demurrer to the complaint must be affirmed.

*By the Court.* — Order affirmed.

RYAN, C. J., took no part.