STATE EX REL. MARTIN, Attorney General, Petitioner, vs. ZIMMERMAN, Secretary of State, Respondent.

*June 7—June 22, 1946.*

For the petitioner there was a brief by the *Attorney General, Stewart G. Honeck,* deputy attorney general, *W. E. Torkelson,* assistant attorney general, attorneys, in which *John A. Lawton* and *Charles W. Totto,* both of Madison, joined, and oral argument by the *Attorney General, Mr. Honeck,* and *Mr. Torkelson.*

*M. G. Eberlein* of Shawano, for the respondent.

FAIRCHILD, J.   Sec. 3, art. IV, of the constitution of the state of Wisconsin, provides as follows:

"At their first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, excluding Indians not taxed, soldiers, and officers of the United States army and navy."

Sec. 4, art. IV, Const., provides:

"The members of the assembly shall be chosen biennially, by single districts, on the Tuesday succeeding the first Monday of November. . . ."

Sec. 5, art. IV, Const., provides:

"The senators shall be elected by single districts of convenient contiguous territory, at the same time and in the same manner as members of the assembly are required to be chosen. . . ."

At a special session of the 1931 legislature, the assembly and senatorial districts were apportioned on the basis of the 1930 census by ch. 27, of the special session, published February 8, 1932. Since the census of 1940, no apportionment has been made by the legislature of the assembly and senatorial districts.

It is the contention of the petitioner that upon the adjournment of the 1941 legislature, without having apportioned the assembly and senatorial districts, the apportionment made by ch. 27, Laws of Sp. Sess. 1931–32 became unconstitutional and void by reason of shifts in the population, and that no valid election can be held without a reapportionment. In this respect it should be pointed out that relator does not maintain this issue consistently because he concedes that an apportionment made in 1941 would hold until the next federal census, even though there were population shifts in the meantime which threw the representation out of proportion. Indeed, in the oral argument it was contended by petitioner that the legislature could not respond to changed conditions between census years and redistrict in order to produce an equitable system of representation.

It is the contention of the respondent that the apportionment of 1931, which was held valid and constitutional in the case of *State ex rel. Bowman v. Dammann* (1932), 209 Wis. 21, 243 N. W. 481, remains in force and effect until such time as the legislature shall make a new apportionment in response to the constitutional mandate.

We very readily reach the conclusion that the prayer of the petitioner, if granted, would lead to a disastrous situation. A

fair apportionment in establishing boundaries to legislative districts should be made, not merely in response to the constitutional fiat, but for the purpose of preserving important political rights of the people. Since this court, however, concededly cannot compel the legislature to act, the enforcement of the constitutional mandate in this respect must be settled in the political forum as an issue involved in the candidacy for seats in the senate and assembly. The mandate is in the constitution and it runs to the legislature. The legislature being a co-ordinate branch of the government may not be compelled by the courts to perform a legislative duty even though the performance of that duty be required by the constitution. The court cannot initiate by judicial action legislation which has been placed in the hands of the legislature. *Jones v. Freeman* (1943), 193 Okla. 554, 146 Pac. (2d) 564. The court has no commission and has been given no power to require the legislature to act in a given particular. The court is empowered to prevent a co-ordinate branch of government acting in excess of the authority vested in it by the constitution. That was all that was done in the case of *State ex rel. Attorney General v. Cunningham* (1892), 81 Wis. 440, 51 N. W. 724, relied upon by petitioner. Quite a different question was presented there where it was assumed that an injunction against an election under an invalid apportionment law would leave in force the existing legislative acts. The fact that in the *Cunningham Case* the court was dealing with a law which never was valid, where in this case the court is asked to construe a law which has been held to be valid, the validity of which at the time it was enacted is not now attacked, makes what is said in the *Cunningham Case* of little effect as to the power of the court in this case. We are not dealing with a law which the legislature had no power to enact. We are dealing with a law which was well within the power of the legislature. An argument which takes no cognizance of this

distinction, based on the decision in the *Cunningham Case,* is not very persuasive.

As will appear from the history of legislation with reference to reapportionment acts, if no valid election of legislators since 1941 has occurred, and this would be the result had ch. 27, Laws of Sp. Sess. 1931–32 become unconstitutional by passage of time, no source exists from whence can come the reapportionment this side of a constitutional convention. In support of this proposition we quote from the case of *Colegrove v. Green* (1946), 328 U. S. 549, 66 Sup. Ct. 1198, 90 L. Ed. 1432, decided June 10, 1946. In refusing to reverse a judgment of the district court of the Northern district of Illinois which dismissed the petitioner's complaint, the United States supreme court said: "Of course no court can affirmatively remap the Illinois districts so as to bring them more in conformity with the standards of fairness for a representative system. At best we could only declare the existing electoral system invalid. The result would be to leave Illinois undistricted." One may well ask, if the districts fixed by ch. 27, Laws of Sp. Sess. 1931–32, are illegal, void, if they do not exist because the law under which they are formed is unconstitutional, where are the districts from which members of the legislature can be chosen in any election, general or special? Against the existence of such confusion, provision was made in our constitution and subsequent legislation connected with and related to the purposes and terms of that constitution. It is provided that each apportionment act is valid until it is supplanted by a subsequent valid act. See *Williams v. Secretary of State* (1906), 145 Mich. 447, 108 N. W. 749. The reasons advanced in the argument made by the learned attorney general are inconclusive and, if followed to their logical conclusion, would bring the government of the state into a legal *cul de sac* because of the elimination, for the time being at least, of one of the equal co-ordinate branches of our govern-

ment. It would destroy our constitutional equilibrium. As suggested, if ch. 27, Laws of Sp. Sess. 1931–32, had become void and legislators elected since 1941 were not chosen from legal and constitutional legislative districts, then would we have a qualified and lawful body to enact a valid reapportionment statute? It is unnecessary, because of the validity of ch. 27, Laws of Sp. Sess. 1931–32, to rely on a theory that legislators elected to office from unconstitutional or nonexistent districts, have by some doctrine of *de facto* officialdom based on *de facto* legislative districts, a right to exercise the important duties necessarily entering into a fair and just apportionment. Once it is determined that the present incumbents are not *de jure* officers, they have no color of authority and could not serve as *de facto* officers. 46 C. J., Officers, p. 1054, sec. 367; *Ekern v. McGovern* (1913), 154 Wis. 157, 142 N. W. 595.

The possibility and perhaps the likelihood of legislative inaction upon the matter of reapportionment was considered when the constitution was adopted. The framers of that document made due provision against such a contingency. This appears from the language used by the framers of the constitution in the instrument itself and by that used by legislatures convened thereafter. In all enactments the continuation of one reapportionment until the next valid one has been provided is the controlling one. This has been declared too often to warrant the change now asked by petitioner.

In the constitution of 1846, which was rejected by the people, the provisions relating to apportionment are found in art. V. In sec. 3 of that article it was proposed that:

"The legislature shall provide by law for an enumeration of the inhabitants of this state, in the year one thousand eight hundred and fifty-five, and at the end of every ten years thereafter; and shall also provide for such enumeration in the year one thousand eight hundred forty-eight; and at their first

session after each enumeration so made as aforesaid, and also after each enumeration made by the authority of the United States, the legislature shall apportion anew the representatives and senators among the several districts, according to the number of inhabitants, excluding Indians not taxed, and soldiers and officers of the United States army and navy."

Sec. 4, art. V, provided that:

"Until there shall be a new apportionment of the senators and members of the house of representatives, the state shall be divided into senatorial and representative districts as follows, and the senators and members of the house of representatives shall be apportioned among the several districts. . . ."

Then follows the apportionment.

In the constitution of 1848, which was adopted, the provisions relating to apportionment are found in art. IV.

Sec. 3, art. IV, Const., provides:

"The legislature shall provide by law for an enumeration of the inhabitants of the state, in the year one thousand eight hundred fifty-five, and at the end of every ten years thereafter; and at their first session after such enumeration, and also after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, excluding Indians not taxed, and soldiers and officers of the United States army and navy."

Sec. 4, art. IV, Const., provides:

"The members of the assembly shall be chosen annually by single districts on the Tuesday succeeding the first Monday of November, by the qualified electors of the several districts. . . ."

Sec. 5, art. IV, Const., provides:

"The senators shall be chosen by single districts of convenient contiguous territory, at the same time and in the same manner as members of the assembly are required to be chosen. . . ."

Sec. 12, art. XIV, of the constitution of 1848, provided:

"Until there shall be a new apportionment, the senators and members of the assembly, shall be apportioned among the several districts, as hereinafter mentioned. . . . "

Then follows the apportionment.

In 1852, by ch. 499, Laws of 1852, an apportionment statute was enacted by the legislature.

The constitutional mandate was complied with by the legislature of 1856 by adopting ch. 109, Laws of 1856. Sec. 1, ch. 109, provides:

"Until there shall be a new apportionment, the senators and members of the assembly shall be apportioned among the several districts of the state as is hereinafter mentioned. . . ."

This was followed by the apportionment.

This same formula appears in the apportionments made in 1861 and in all succeeding apportionment laws enacted by the legislature.

Following the census of 1880, there was no apportionment by the legislature of 1881. However, the legislature of 1882 adopted an apportionment which is found in ch. 242, of the laws of that year.

The apportionment laws following the census of 1890 were the subject of a spirited political controversy, and the several apportionment acts passed became the subject of litigation which is to be found in *State ex rel. Attorney General v. Cunningham, supra,* and *State ex rel. Lamb v. Cunningham* (1892), 83 Wis. 90, 53 N. W. 35.

After the census of 1900 districts were reapportioned by chs. 164 and 309, Laws of 1901.

Although a state census was taken in 1905, there was no apportionment based upon that census and the elections for 1907, 1909, and 1911 were held on the basis of the 1901 apportionment.

There was introduced into the legislature of 1907 a resolution proposing that sec. 3, art. IV, of the constitution, be amended to read:

"At their first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, excluding Indians not taxed, and soldiers and officers of the United States army and navy."

The amendment was adopted in 1910.

Whether the legislature failed to make an apportionment in accordance with the constitutional command because of the proposed amendment to the constitution or for some other reason does not appear. However, no one questioned the validity of the apportionment of 1901, upon the basis of which subsequent elections were held. The next apportionment in 1911 is ch. 661, of the laws of that year.

In the case of *State ex rel. Attorney General v. Cunningham, supra,* three opinions are written,—one by Mr. Justice ORTON, one by Mr. Justice PINNEY, in which Mr. Justice WINSLOW concurred, and one by Mr. Chief Justice LYON. Mr. Justice CASSODAY wrote no opinion but stated that he was in accord with the judgment and said (p. 532) :

"The reasons in support of it, given in the several opinions filed, taken together, are so full and complete as to call for nothing additional from me."

In his opinion, Mr. Justice LYON commented upon the apportionment of 1882, which was made one year after it should have been made if the mandate of the constitution had been obeyed strictly. He said (p. 528) :

"The apportionment of 1882 furnishes but one case of county dismemberment. Fractions of Calumet and Outagamie counties were placed in one assembly district."

but he did not call attention to the fact that the apportionment had been made in 1882 instead of 1881.

While the legislatures of 1881, 1907, and 1909 failed to enact a reapportionment statute, no one has questioned either the validity of the elections held on the basis of the last pre-

ceding apportionment or made a claim to the effect that an apportionment lapses in the event that a legislature required to make an apportionment adjourns without making a new one.

The petitioner does not contend that the apportionment made by ch. 27, Laws of Sp. Sess. 1931–32, was not valid at the time it was enacted. His contention is that, by reason of the lapse of time and consequent shifts in population of the several districts, it has become unconstitutional. In other words, that on the basis of the 1940 census, the assembly and senatorial districts created by the apportionment of 1931 are no longer in accordance with the constitutional mandate, and cites the following cases in support of that contention : *Nashville C. & Ry. v. Walters*, 294 U. S. 405, 55 Sup. Ct. 486, 79 L. Ed. 949; *City and County of San Francisco v. Market St. Ry. Co.* (9th Cir.) 98 Fed. (2d) 628, 633; *Chastleton Corp. v. Sinclair*, 264 U. S. 543, 44 Sup. Ct. 405, 68 L. Ed. 841.

These are cases dealing with legislation which becomes confiscatory when applied to certain classes of cases and so operate as to deprive a citizen of his property without due compensation.

*Chastleton Corp. v. Sinclair, supra,* arose under the federal act relating to the regulation of rents, and merely recognizes a well-established rule of law. It is considered that these cases have no application to the question under consideration.

The petitioner further argues that the act ceased to be of any effect *ipso facto* upon the adjournment of the 1941 session of the legislature without enacting an apportionment act. Ch. 27, Laws of Sp. Sess. 1931–32, by its terms provides that assemblymen and senators shall be elected in accordance with that apportionment until there is a new apportionment, so that the act did not expire by its terms and does not expire until some legislature reapportions the state in accordance with the constitutional mandate.

The pending proceedings cannot amount to anything but an effort by indirection or the use of moral suasion to persuade

the executive or the legislative branch of the government to act upon a matter which is entirely within their respective provinces and over which the courts do not have jurisdiction. "The constitution has many commands that are not enforceable by courts because they clearly fall outside the conditions and purposes that circumscribe judicial action. . . . The constitution has left the performance of many duties in our governmental scheme to depend on the fidelity of the executive and legislative action and, ultimately, on the vigilance of the people in exercising their political rights." *Colegrove v. Green, supra.*

This is a petition for leave to commence an original action in this court. The matter is one involving not only the state in its sovereign capacity, but also importantly affecting all the people of the state. Hence, on that score we would be warranted in assuming jurisdiction, provided it was not clear in advance that any action which we could take would be completely futile. It is conceded by both parties to the action that this court is without power to compel the legislature to reapportion the state, and that the only action possible is the enjoining of an election under an allegedly invalid apportionment statute. In order to determine whether the court could take effective action we have felt obliged to pass upon the present validity of ch. 27, Laws of Sp. Sess. 1931–32, this being the last apportionment act. Having concluded that ch. 27, Laws of Sp. Sess. 1931–32, was validly enacted, that it would not, by its terms expire upon the adjournment of the legislature of 1941, and that it did not become unconstitutional by reason of shifts in the population of the various assembly and senatorial districts, it is evident that this court can take no effective action in the matter, and considerations of comity between this and co-ordinate branches of the government require that the court decline jurisdiction in the matter.

*By the Court.*—Petition denied.

RECTOR, J., took no part.