State ex rel. Broughton and others, Petitioners, vs. Zimmerman, Secretary of State, and another, Respondents.

*March 7—April 8, 1952.*

*James E. Doyle* of Madison, for the petitioners.

The *Attorney General* and *Roy G. Tulane,* assistant attorney general, for the respondent Fred R. Zimmerman.

For the respondent Board of Election Commissioners of the city of Milwaukee there was a brief by *Walter J. Mattison,* city attorney, *Harry G. Slater,* first assistant city attorney, and *Richard F. Maruszewski,* assistant city attorney, and oral argument by *Mr. Slater* and *Mr. Maruszewski.*

CURRIE, J. The duty of the legislature to reapportion the state is stated in sec. 3, art. IV of the Wisconsin constitution as follows:

"At their first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, excluding Indians not taxed, soldiers, and officers of the United States army and navy."

Ch. 728, Laws of 1951, provides:

"Section 1. . . . 4.01 *Assembly districts.* Until there shall be a new apportionment, the members of the assembly shall be apportioned among the several districts of the state as hereinafter mentioned, and each district shall be entitled to elect one member of the assembly. [Here follows the detailed description of the new assembly districts.] . . .

"Section 2. . . . 4.02 *Senate districts.* Until there shall be a new apportionment, the senatorial districts of the state shall be constituted as follows: The counties of Manitowoc, Kewaunee, and Door shall constitute the first district. [Here follows the detailed description of the new senate districts.] . . .

"Section 3. There shall be submitted to the vote of the people at the general election in November, 1952, an advisory referendum on the question:

" 'Shall the constitution be amended to provide for the establishment of either senate or assembly districts on an area as well as population basis?'

"If the above question is rejected by a majority of the electors voting on such referendum, sections 1 and 2 of this act shall take effect January 1, 1954, otherwise said sections 1 and 2 of this act shall not be effective.

"Section 4. Notwithstanding the provisions of chapter 261, Laws of 1951,[1] it is the intent of the legislature, in enacting this act, that each part of the act be deemed to be essentially and inseparably connected with and dependent upon every other part. The legislature does not intend that

---

[1] This chapter creates sec. 370.001 (11), Stats., which provides a severability clause of general application in construing statutes.

any part of this act shall be the law if any other part is held unconstitutional."

It is conceded by all parties that secs. 1 and 2 of ch. 728, Laws of 1951, which embody the Rosenberry Plan with but a few minor modifications, provide for a reapportionment of the legislative districts of the state which fully complies with the provision of sec. 3, art. IV of the state constitution. However, the petitioners attack the validity of secs. 3 and 4, ch. 728, Laws of 1951, and request that this court declare the same to be unconstitutional and void and enjoin the respondents from proceeding with the 1952 legislative elections on the basis of the assembly and senate districts as they were defined prior to the enactment of ch. 728, and that the respondents be compelled instead to proceed with said elections on the basis of reapportionment of legislative districts provided for by secs. 1 and 2 of ch. 728. In other words, the petitioners are asking this court to disregard the provisions of ch. 728 which provide January 1, 1954, as the effective date of the redistricting of the state, and which make such redistricting contingent upon the electors voting "No" on the referendum question to be submitted at the November, 1952, general election, and instead to make secs. 1 and 2 effective immediately so as to apply to the 1952 elections for members of the legislature.

Before considering the specific questions thus raised by petitioners we deem it to be both helpful and advisable that we first consider the general principles of law applicable to the question of reapportionment because the specific issues raised must be decided in the light of these general principles.

The Wisconsin constitution is modeled after that of the United States constitution in that it provides for three separate co-ordinate departments of government, the legislative, executive, and judicial. That which the Illinois supreme court declared in *Fergus v. Marks* (1926), 321 Ill. 510, 514, 152 N. E. 557, 46 A. L. R. 960, with respect to the sphere

and function of each of the three independent departments of the government in the state of Illinois applies with equal force to our situation in Wisconsin. In that case the Illinois court stated:

"Neither of these three departments is subordinate to or may exercise any control over another except as is provided by the constitution. Their status is that of equality, each acting within its own sphere independent of each of the others, so long as its action does not exceed the powers confided to it, unless particular exceptions are made to this general rule by the constitution itself. (*People v. Bissell,* 19 Ill. 229, 68 Am. Dec. 591.) The legislative department determines what the law shall be, the executive department executes or administers the law, and the judicial department construes and applies the law. Neither one of these departments can arrogate to itself any control over either one of the other departments in matters which have been solely confided by the constitution to such other department. The power to enact statutes is, clearly, solely a legislative power confided by the constitution to the legislature. The power to construe statutes is confided to the judiciary."

In *Goodland v. Zimmerman* (1943), 243 Wis. 459, 466, 467, 10 N. W. (2d) 180, this court stated these same principles as follows:

"It must always be remembered that one of the fundamental principles of the American constitutional system is that governmental powers are divided among the three departments of government, the legislative, the executive, and judicial, and that each of these departments is separate and independent from the others except as otherwise provided by the constitution. . . . While the legislature in the exercise of its constitutional powers is supreme in its particular field, it may not exercise the power committed by the constitution to one of the other departments.

"What is true of the legislative department is true of the judicial department. The judicial department has no jurisdiction or right to interfere with the legislative process. That is something committed by the constitution entirely to the legislature itself."

Our state constitution places the power to reapportion the legislative districts exclusively in the legislature, and if the legislature fails to perform the duty enjoined upon it by sec. 3, art. IV, Const., to reapportion the state at the first session of the legislature ensuing after each federal census, the courts are without power to compel the legislature to perform its constitutional duty in such respect. In *State ex rel. Martin v. Zimmerman* (1946), 249 Wis. 101, 104, 23 N. W. (2d) 610, the relief sought was an injunction restraining the defendant secretary of state from taking any action in the matter of nominating candidates for, or electing individuals to, the office of assemblyman or state senator under districts established by the 1932 apportionment, the theory of the action being that if the secretary of state was enjoined, the legislature would be forced to reapportion, as otherwise no valid elections for nominating and electing members for the legislature could have been held in 1946. This court in that case held that it was without constitutional power to compel the legislature to reapportion, and in its decision declared:

"Since this court, however, concededly cannot compel the legislature to act, the enforcement of the constitutional mandate in this respect must be settled in the political forum as an issue involved in the candidacy for seats in the senate and assembly. The mandate is in the constitution and it runs to the legislature. The legislature being a co-ordinate branch of the government may not be compelled by the courts to perform a legislative duty even though the performance of that duty be required by the constitution. The court cannot initiate by judicial action legislation which has been placed in the hands of the legislature. *Jones v. Freeman* (1943), 193 Okla. 554, 146 Pac. (2d) 564. The court has no commission and has been given no power to require the legislature to act in a given particular."

The result reached by this court in *State ex rel. Martin v. Zimmerman, supra,* is in accord with the decisions of other

states having provisions in their constitutions with respect to apportionment similar to that contained in the Wisconsin constitution, as the courts have uniformly held that they are without constitutional power to compel a legislature to perform the duty to reapportion enjoined upon it by a state constitution. *Waid v. Pool* (1951), 255 Ala. 441, 51 So. (2d) 869; *Fergus v. Marks* (1926), 321 Ill. 510, 152 N. E. 557, 46 A. L. R. 960; and *Jones v. Freeman* (1943), 193 Okla. 554, 146 Pac. (2d) 564.

We now turn to the specific issues raised by petitioners. In order for this court to grant to the petitioners the relief which they seek, it would be necessary not only that we invalidate sec. 3 of the act, which postpones the effective date of the apportionment provided in secs. 1 and 2 until January 1, 1954, and makes such apportionment contingent upon the electors voting "No" on the referendum issue also specified in sec. 3, but also that we disregard the mandate of sec. 4 that the legislature did not intend that any part of the act should be law if any other part is held unconstitutional. The petitioners attempt to surmount this latter hurdle by contending that sec. 4 is also invalid.

We believe that it is essential that we first determine the validity of sec. 4 before passing upon sec. 3, because the validity or invalidity of sec. 4 will determine whether we are confronted with a situation wherein we must either hold that the entire reapportionment act enacted by the 1951 legislature be constitutional, or wholly void, or whether we are given the option of holding part of the act void and part valid.

The power and duty imposed upon the legislature by the constitution to reapportion the state after each federal census can only be exercised by both the houses of the legislature passing a bill that becomes a law upon the signature of the governor and publication, or, if the governor should veto it, upon repassage by the required vote over his veto, and

publication. All prior reapportionments of the state during the past one hundred four years of its history have been accomplished in this manner by laws enacted by the legislature. Therefore, in construing a reapportionment statute, such as ch. 728, Laws of 1951, the same rules of statutory construction are applicable as apply in the case of statutes generally.

Concomitant with nearly every decision wherein a court has declared part of a statute unconstitutional there is presented the further question of whether the entire act must be held invalid by reason thereof, or whether only the part held invalid is void, leaving the remainder valid and enforceable unaffected by such partial invalidity. In deciding this latter question the courts have almost universally adopted the principle that the all-determining factor is the intention of the legislature. One of the classic statements in our legal literature on the subject of partial or total invalidity of statutes is that made by Mr. Chief Justice SHAW in the Massachusetts case of *Warren v. Mayor and Aldermen of Charlestown* (1854), 2 Gray (68 Mass.), 84, 99:

"Yet other parts of the same act may not be obnoxious to the same objection, and therefore have the full force of law, in the same manner as if these several enactments had been made by different statutes. But this must be taken with this limitation, that the parts, so held respectively constitutional and unconstitutional, must be wholly independent of each other. But if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them."

Mr. Justice PAINE in the early case of *Slauson v. Racine* (1861), 13 Wis. *398, *404, voiced this same principle when he stated in his opinion in that case:

"It is undoubtedly true that parts of a statute may be unconstitutional, and yet other parts, capable of being executed independently, held valid. But the counsel for the plaintiff contends that where parts of a statute are unconstitutional and other parts valid, the former being evidently designed as compensation for or inducements to the latter, so that the whole taken together warrant the belief that the legislature would not have passed the valid parts alone, then the whole act should be held inoperative. This position is fully sustained by the case of *Warren and others v. Charlestown*, 2 Gray, 84, and seems to us to rest upon solid reasons."

Two later Wisconsin cases adhered to the same rule as that stated in *Slauson v. Racine, supra*: *State ex rel. Williams v. Sawyer County* (1909), 140 Wis. 634, 123 N. W. 248; and *State ex rel. Wisconsin Tel. Co. v. Henry* (1935), 218 Wis. 302, 316, 260 N. W. 486, 99 A. L. R. 1267. The statement of the principle enunciated in *State ex rel. Wisconsin Tel. Co. v. Henry, supra,* is particularly pertinent:

"It is well established that the elimination of even material provisions in an act as enacted, because of the invalidity of such provisions, does not render the remaining valid provisions thereof ineffective, if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, *unless it appears from the act itself that the legislature intended it to be effective only as an entirety and would not have enacted the valid part alone.*" (Emphasis supplied.)

2 Sutherland, Statutory Construction (3d ed.), p. 176, sec. 2403, states this same rule as follows:

"In determining the separability of a statute, as in any problem of statutory construction, the ultimate decision will rest upon a judicial determination of legislative intent. The problem is twofold: The legislature must have intended that the act be separable, and the act must be capable of separation in fact. From the act itself the court must find a manifest or apparent intent to deal with a portion of the original subject matter irrespective of the validity of the remainder of the act. *Where the act is such as to warrant the belief that*

*the legislature would not have passed the act without the invalid parts, the whole act must be held inoperative."* (Emphasis supplied.)

In the instant case there is no necessity for this court to grope in darkness in an effort to spell out the legislative intent. The legislature had made it crystal clear by its language in sec. 4 of ch. 728 that it *"does not intend that any part of this act shall be the law if any other part is held unconstitutional."* In the absence of sec. 4, if we were to find sec. 3 invalid, we would then be faced with the issue of whether secs. 1 and 2 should be upheld as valid in spite of such invalidity of sec. 3, and the determining factor would be the legislative intent. All that sec. 4 does is to state such legislative intent, and we can perceive no valid reason why the legislature does not have the right to definitely state its intent as to severability. We, therefore, have no hesitancy in upholding the validity of sec. 4.

If this court should determine that sec. 3 of ch. 728, Laws of 1951, be unconstitutional and void, but that such invalidity does not affect the validity of secs. 1 and 2, and should therefore hold secs. 1 and 2 to be operative immediately, thereby completely ignoring the statement in sec. 4, that if any part of the act is unconstitutional the legislature did not intend any part to be law, *the court and not the legislature would be legislating reapportionment.* We went to some pains to point out earlier in this opinion that the power to legislate and the power to reapportion are vested by the constitution exclusively in the legislature, and the judicial department cannot encroach upon those powers which the constitution vests exclusively in the legislature. This court has been jealous in the past in upholding the spirit of the concept of division of powers of the three separate branches of our state government, firmly believing that the liberty of our citizens is in no small part dependent thereon. For example, Mr. Justice Doerfler, speaking for this court in *Estate of Wilkins* (1927), 192 Wis. 111, 114, 211 N. W. 652, declared:

"Each branch of the government is supreme in its field, and if one branch invades the territory of another, contrary to the fundamental law, it results in an attack upon the very foundation of the government itself, and the result must necessarily be disastrous and revolutionary in its nature."

We therefore conclude that, inasmuch as the legislature has made it clear that it did not intend to enact ch. 728, Laws of 1951, except as a whole, and, if any part is found invalid then the remainder shall not constitute law, if we find any part of sec. 3 invalid we must declare the entire reapportionment act void, and have no alternative which would permit us to find part of the act valid and part invalid.

Counsel for the petitioners contends that sec. 3 of ch. 728, Laws of 1951, is unconstitutional and void for two reasons: (1) Because such reapportionment is contingent upon the voters participating in the November, 1952, general election voting "No" on the referendum question; and (2) because the effective date of the reapportionment provided for in secs. 1 and 2, ch. 728, Laws of 1951, is postponed to January 1, 1954.

In considering this question we should keep in mind that there is a presumption that all acts of the legislature are constitutional until established otherwise, and this presumption applies to apportionment acts as well as other statutes. In *State ex rel. Warson v. Howell* (1916), 92 Wash. 540, 544, 159 Pac. 777, the Washington supreme court stated:

"It cannot be disputed that the presumption of constitutionality attaches to apportionment acts in the same manner that it does to any other act of the legislature, and that any doubt as to the power of the legislature to pass the particular act must result in a finding that the act is within the legislative power. It is axiomatic also that the constitution is a limitation of power, not a grant of power, and that, save for constitutional restrictions, the legislature could apportion the state in any manner it deemed fit and the courts would be powerless to inquire into the validity of the act. It follows, therefore, that the facts adduced to show

the alleged unconstitutionality of the act in question must be clear and convincing, and must establish beyond question that the legislature in enacting the law went entirely beyond the limits marked by the constitution."

Furthermore, as the United States supreme court recently declared in its decision in *Colegrove v. Green* (1946), 328 U. S. 549, 66 Sup. Ct. 1198, 90 L. Ed. 1432, reapportionment ordinarily presents a political question and not a justiciable one. In that case the plaintiffs (three qualified voters) sought to enjoin the election officials of the state of Illinois from proceeding with the 1946 election of members of the federal house of representatives on the basis of an existing Illinois apportionment act enacted in 1901, which suit sought to invalidate such act because of the great disparity in population in the various congressional districts provided by such act, and thereby compel all congressmen from the state to be elected at large and not by districts until such time as a new valid apportionment act might be enacted by the state legislature. The United States supreme court in its opinion declared (pp. 553, 556):

"Nothing is clearer than that this controversy concerns matters that bring courts into immediate and active relations with party contests. From the determination of such issues this court has traditionally held aloof. It is hostile to a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law. . . .

". . . The constitution has many commands that are not enforceable by courts because they clearly fall outside the conditions and purposes that circumscribe judicial action. . . . The constitution has left the performance of many duties in our governmental scheme to depend on the fidelity of the executive and legislative action and, ultimately, on the vigilance of the people in exercising their political rights."

Because controversies over apportionment are ordinarily political in nature, courts should be hesitant to intervene

therein. In fact, courts should never attempt to grant affirmative relief in such a controversy which involves either a failure of the legislature to reapportion as required by the constitution, or a tardy performance of such duty. However, if the legislature enacts an apportionment statute which attempts to apportion the state in a way which is contrary to the provisions of the state constitution, so that it is impossible to reconcile the action taken with the constitution, then it is the duty of the courts to hold the same unconstitutional.

Does the condition imposed by sec. 3 of the act making the reapportionment contingent on the outcome of the referendum election to be held in November, 1952, render such section, and thereby the entire act, unconstitutional and void? The constitution contains no provision authorizing the legislature to enact an apportionment statute contingent upon the outcome of a referendum vote of the electors of the state, and no such authority can be implied from the constitution.

If the act is to be held invalid because of the insertion of the referendum clause, it is not because the making of the reapportionment contingent upon the outcome of the referendum constitutes an unconstitutional delegation of legislative power. Probably the leading case in Wisconsin on the question of unconstitutional delegation of legislative power is that of *State ex rel. Van Alstine v. Frear* (1910), 142 Wis. 320, 323, 125 N. W. 961. In that case this court was called upon to consider the validity of ch. 451, Laws of 1903, the Primary Election Law, which provided for the nomination of candidates for state offices by primary election rather than by party conventions. This act provided in sec. 26 that the question of whether or not the act should go into effect should be submitted to the voters at the next general election in November, 1904, and continued: " 'If approved by a majority of the votes cast upon that question, it shall go into effect and be in force from and after such ratification by the people; otherwise it shall not take effect

or be in force.' " This act was challenged upon the principal ground that the provision for a referendum was an invalid delegation of legislative power. After stating that the law was settled that the legislature could not delegate the power to make a law, the court stated (p. 324) :

"It is just as well settled that, while the legislature may not delegate its power to make a law, it can make a law to become operative on the happening of a certain contingency or on the ascertainment of a fact upon which the law makes or intends to make its own action depend."

In the *Van Alstine Case* after a full review of all existing authorities including the early Wisconsin cases of *State ex rel. Attorney General v. O'Neill* (1869), 24 Wis. 149, and *Smith v. Janesville* (1870), 26 Wis. 291; and the Vermont case of *State v. Parker* (1854), 26 Vt. 357, the court concluded that a law which was complete on its face but the operation of which was postponed to some future contingency, was valid and constitutional. Hence, the Primary Election Law, which was based on the contingency of the favorable vote of the electors, was valid.

Mr. Chief Judge REDFIELD speaking for the Vermont court in *State v. Parker, supra,* declared (p. 364) :

"Congress passes laws, almost every session, whose operation is made contingent upon the revenue laws of foreign states, or their navigation laws or regulations, and upon a hundred other uncertainties, more or less affected by the will or agency of voluntary beings or communities; and in most of these cases the suspension or operation of the enactment depends ultimately, perhaps, upon the mere will and agency of our executive government; and of the perfect regularity and constitutionality of such enactments no question was ever made. Numerous other instances may be found where statutes have been made dependent upon future contingencies, not only for the time of their coming in force, but for their very vitality; and no question of their validity has ever been made upon that ground. This is all recognized as sound law and es-

tablished precedent by those courts and by those judges who have attempted to argue that a law, made dependent upon a popular vote, was different in principle from one dependent upon other contingencies. But all such attempts seem to me altogether illusory, and, to some extent, captious, not to say frivolous.

"If the operation of a law may fairly be made to depend upon a future contingency, then, in my apprehension, *it makes no essential difference what is the nature of the contingency, so it be an equal and a fair one, a moral and legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one.*" (Emphasis supplied.)

Suppose the legislature in its 1951 general session should have enacted no apportionment act whatever, but instead had provided for the submission to the electors at the November, 1952, general election of the referendum question contained in sec. 3 of ch. 728, Laws of 1951, and had declared its purpose in so doing was so that the 1953 legislature might enact an apportionment act effective January 1, 1954, if a majority of the electors voting should have voted "No" on the referendum question. If that had been done the petitioners would have no standing in court either to remedy the failure of the 1951 legislature to apportion or to attack the validity of the referendum. The effect of the referendum provision of sec. 3, of ch. 728, which will result if a majority of the voting electors do vote "Yes" on the referendum question, is that the 1951 legislature will have failed to have reapportioned the state. This court, however, should not declare ch. 728 unconstitutional because of the contingency that the end result of it may be no reapportionment at all. Such feature of the act is a failure of the legislature to perform its duty to reapportion, as to which we have no power to compel performance, and not an enactment of an apportionment statute which apportions the state in a method contrary to that provided in the constitution.

We now come to that which we consider to be the most serious objection raised by petitioners' counsel as to the validity of the referendum feature of the act, which is that the apportionment which the legislature should have made effective so as to apply to the 1952 elections is by reason thereof necessarily postponed until 1954. This poses the same question of validity as does counsel's objection that the January 1, 1954, effective date in sec. 3 renders the section unconstitutional.

While sec. 3, art. IV of the Wisconsin constitution requires that the legislature at its first session after each federal census apportion the legislative districts according to population, the constitution is silent as to when the new apportionment act so enacted by the legislature is to take effect. This court, however, stated in *State ex rel. Attorney General v. Cunningham* (1892), 81 Wis. 440, 516, 51 N. W. 724:

"The plain intent of this provision is to enable a new apportionment to *be made at the earliest practicable period after the enumeration, to the end that the change in the representation thereby required shall readily become effective and not be unreasonably delayed."*

It was also held in *State ex rel. Attorney General v. Cunningham, supra,* that the power of the legislature to apportion is continuing and does not lapse if not exercised at the first general session of the legislature after the federal census. The provision in the Wisconsin constitution requiring the legislature to apportion the state at its first general session after each census is not unique but is found in many of the constitutions of other states. The highest appellate courts in these other states having such a constitutional provision have without exception held that if the legislature fails to apportion at the first general session after the census it may do so in a subsequent session, the power to apportion being continuing. *Opinion of the Justices* (1950), 254 Ala. 185, 47 So. (2d) 714; *Fergus v. Kinney* (1928), 333 Ill. 437,

164 N. E. 665; *Botti v. McGovern* (1922), 97 N. J. L. 353, 118 Atl. 107; *People ex rel. Carter v. Rice* (1892), 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836; and *Opinion of the Judges* (1933), 61 S. D. 107, 246 N. W. 295. The reasoning of the courts in arriving at this conclusion is well illustrated by the following statement appearing in the decision of the Alabama supreme court in *Opinion of the Justices, supra* (p. 186):

"The legislature by a mere omission to perform its constitutional duty at a particular session cannot thereby prevent for another ten years the apportionment provided for by the constitution. The duty is a continuing one and, if it is not discharged at or within the time prescribed, the duty rests upon succeeding general assemblies."

Therefore, while it was the duty of the Wisconsin legislature at its 1951 session to have enacted an apportionment statute redistricting the legislative districts of the state on a population basis and make such law effective at once so as to govern the 1952 elections to the legislature, still if it had failed to pass any reapportionment law at all it would, nevertheless, have the continuing power and the duty to have enacted an apportionment act at its 1953 session effective for the 1954 legislative elections. This being so, it is difficult to perceive any logical distinction between a situation wherein the 1951 legislature would have failed to enact any apportionment law at all at its 1951 session, and then at its 1953 session have enacted one effective with respect to the next elections for the members of the legislature in 1954, and the situation we have before us in which the 1951 legislature enacted an apportionment statute effective January 1, 1954. On the other hand, if the apportionment act before us provided for an effective date so far in the future so as to occur after the 1960 census had been completed, it clearly would be invalid and unconstitutional. However, we find

it unnecessary in this case to decide the extreme limit in use of a postponed effective date that would mark the dividing line between a valid and an invalid enactment. It is sufficient for the purpose of deciding the controversy before us that we find that an effective date of January 1, 1954, does not render the act invalid.

Counsel for petitioners in his reply brief states:

"In situations in which the legislature has spurned its constitutional duty to reapportion at the specified time, the courts have been faced with the question whether to give effect to a tardily enacted reapportionment. *Of course, they have adopted the only sensible course.* The courts have recognized that legislative performance of its constitutional duty to reapportion is better late than never. The courts have given effect to tardy reapportionments *because to do so is to approach most nearly the constitutional objective,* whereas to deny effect to tardy reapportionment is to thwart even an approximation of the constitutional objective." (Emphasis supplied.)

It would seem to be fair to infer from the foregoing quotation from petitioners' reply brief that a proper approach for the court to take in determining the question of the validity or invalidity of ch. 728, Laws of 1951, would be to apply the test of which result would best attain the constitutional objective. In other words, we should not hold sec. 3 of the statute invalid, thereby invalidating the entire statute, unless we find that by so doing the constitutional objective of reapportionment according to population can be better realized thereby than it would if we were to refuse to invalidate the act. We believe that such an approach is founded upon sound merit.

In considering what the practical effect would be, if we were to hold ch. 728, Laws of 1951, invalid because of containing the referendum provision, we cannot shut our eyes to certain facts. One of these is that the last prior reapportionment made by the legislature was that enacted at its

special session in 1931–1932, which means that the 1941, 1943, 1945, 1947, and 1949 legislatures failed to perform the duty enjoined upon them by the constitution to apportion the legislative districts of the state on the basis of the 1940 census. Another significant fact is that the assembly of the 1951 legislature refused to pass any apportionment statute reapportioning the state on the basis of population as disclosed by the 1950 census until secs. 3 and 4 of the present statute (ch. 728, Laws of 1951), were added to Bill 608, S. There is no question but what no reapportionment act would have been enacted by the 1951 legislature unless the compromise embodied in secs. 3 and 4 of the present act had been added. On the basis of these facts it would seem reasonable to assume that if ch. 728 is invalidated by this court there is at least some doubt that the 1953 legislature might enact a reapportionment law redistricting the assembly and state senate districts on the basis of population effective as to the 1954 legislative elections.

On the other hand, if we hold ch. 728, Laws of 1951, to be valid, there appears to be a fair prospect that the apportionment provided for in secs. 1 and 2 of the act will become effective January 1, 1954, and will be applicable to the 1954 legislative elections. This result will be attained if the majority of electors voting in the election this year will vote "No" on the referendum question, inasmuch as by so doing the voters will be voting to continue to have both houses of the legislature elected on a population basis, thus continuing the present system provided for in the constitution.

The Alabama supreme court in the recent case of *Waid v. Pool* (1951), 255 Ala. 441, 442, 51 So. (2d) 869, in which it held that it had no constitutional power to compel the state legislature to reapportion, if the legislature failed to perform its constitutional duty so to do, declared, "The grievance complained of and recourse therefor should be made to the legislature and the people of the state, not to the court."

Sec. 3 of ch. 728 does attempt to place directly in the people of this state the remedy to insure that the constitutional mandate for reapportionment on a population basis be made effective January 1, 1954. If the people of Wisconsin do desire such reapportionment they can attain such result by voting "No" at the referendum election. Thus the voters are thereby afforded a remedy far more effective than any that this court can provide by holding ch. 728 invalid.

In conclusion, the gist of the charge that ch. 728 is unconstitutional is based on the fact that the apportionment provided therein is not absolute but is contingent, and that instead of being effective as to the 1952 legislative elections it will not be effective until those of 1954. However, it is conceded that the method of apportionment provided when, and if, it does become effective is in accordance with the mandate of the constitution. It would therefore appear that the defects complained of are in the same category as a total failure to apportion, rather than being in the nature of an apportionment which does not comply with the constitutional requirement of redistricting according to population. This being the case, this court cannot grant relief without encroaching upon the powers which are vested by the constitution exclusively in the legislature. For this reason, together with the fact that we are of the opinion that upholding the validity of the act is more likely to result in attainment of the constitutional objective of an apportionment based on the 1950 census than if we were to hold the statute invalid, we hold ch. 728, Laws of 1951, not to be unconstitutional.

*By the Court.*—Petition denied.

FAIRCHILD, J. (*dissenting*). There are propositions in the able opinion, where Mr. Justice CURRIE speaks for the majority, with which I do agree, but I cannot concur in the over-all conclusion that sec. 4 is effective and that sec. 3 is not severable. If sec. 3 is severable, then secs. 1 and 2 give

us a valid law apportioning the legislative districts. Sec. 3, art. IV of the Wisconsin constitution requires that "At their first session after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and assembly, according to the number of inhabitants, excluding Indians not taxed, soldiers, and officers of the United States army and navy." The history of the effort at reapportionment since 1931 is set forth in the majority opinion. It seems to me that sec. 3 of ch. 728, Laws of 1951, published August 17, 1951, is so far from being germane to the reapportionment question, which was properly before the legislature and properly treated in secs. 1 and 2, as to fall within the condemnation of the rule set forth in *Bull v. Conroe,* 13 Wis. *233, *237, where it is said that the constitution may be violated by a neglect of the legislature to discharge a duty enjoined upon it by that instrument; and I am of the opinion that the provision of sec. 4 of the same chapter does not require holding of nonseverability.

Therefore it seems to me improper to give the same effect to the inseparability clause (sec. 4) in the reapportionment act as the court would give the same clause in a law, a portion of which is invalid.

In the ordinary case the intent of the legislature controls as to whether the law shall go into effect. In the matter at bar, it is not the will of the majority of the legislators, but the performance of a duty or exercise of a power by the legislature fixed and conferred by the constitution which is to be served. Again, in the ordinary case an inseparability clause would be an expression of legislative intent upon a matter with which the legislature was empowered to deal, free from the constitutional restrictions. In the case of reapportionment, the same clause does nothing more than represent an attempt by the legislature to exceed its power.

If the legislature, acting under its general lawmaking power, passes a law, a portion of which violates the constitution, the question of the invalidity of that portion is subject to consideration by the courts, and there must be a determination, then, whether the entire act shall fall or only the invalid portion. In that case, it is a question of construction. Did the legislature intend that the valid portion be enforced, even though the other portion falls? Or, did the legislature intend that no part of the law should go into effect unless all of it could? Separability or inseparability clauses are evidence of legislative intent. This is because in the field of lawmaking in general, the legislature has the right and power to choose whether or not there shall be any law on a particular subject.

The power of the legislature in the field of apportionment is different. The legislature does not have the right to choose whether there shall be a reapportionment law or not. Its sole duty is to apportion and district anew. This would necessarily result in the enactment of a law which contains the boundaries of senate and assembly districts which meet the standards set forth in the constitution.

The 1951 legislature performed that task. They added a nongermane and distinct provision, which must be ignored in considering the subject of reapportionment. The reapportionment act does contain the boundaries of districts which meet the standards. This enactment is found in secs. 1 and 2. Sec. 3, which the legislature sought to reinforce by adding sec. 4, is not properly associated with or germane to the propriety of the districts described in secs. 1 and 2. Those districts will be neither more nor less compatible with the standards required by the constitution, regardless of what happens under sec. 3.

Secs. 3 and 4 are both essentially expressions of the determination of the members of the legislature on the question: "Shall there be a reapportionment?" But this is a choice which is beyond the power of the legislature. There are

many points to be determined, the decision of which must be made in drawing up a reapportionment: How shall counties or towns or wards be grouped within a district? Shall one unit be added to the district on one side or the other? And so on. Those who framed and drafted the constitution determined that these decisions should be made by the legislature. It must be agreed that there is no way in which the court can compel the legislature to make these decisions and describe the legislative districts. But in the 1951 reapportionment act, in secs. 1 and 2, the legislature has made all the decisions which the constitution gave it the power to make on the subject of reapportionment. The court could not compel it to act, but when it did act, the court can determine the effect of its act and, where it has proceeded according to the constitutional requirements, can sustain that portion, and hold invalid the further exceeding of its power.

To give effect to sec. 4 is to say that the legislature, by separate and distinct acts, can by one act provide a proper reapportionment and by another veto it or subject it to a contingency which may result in its not being effective. "This court has repeatedly held void such discriminate exercise of arbitrary legislative power." *Anderton v. Milwaukee,* 82 Wis. 279, 284, 52 N. W. 95. See also *Bull v. Conroe, supra; Durkee v. Janesville,* 28 Wis. 464; *Hincks v. Milwaukee,* 46 Wis. 559, 1 N. W. 230; *Culbertson v. Coleman,* 47 Wis. 193, 2 N. W. 124; *Hughes v. Fond du Lac,* 73 Wis. 380, 382, 41 N. W. 407; *Janesville v. Carpenter,* 77 Wis. 288, 46 N. W. 128; *Wilder v. Chicago & W. M. R. Co.* 70 Mich. 382, 38 N. W. 289; *State ex rel. McCue v. Sheriff,* 48 Minn. 236, 51 N. W. 112.

I think there is an important distinction arising out of the difference in the power exercised in an ordinary legislative act and the power here being attempted to be exercised. There is in Cooley, Const. Lim. (7th ed.), p. 184, the following statement: "But what is for the public good, and what

are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion which cannot be controlled by the courts, except, perhaps, where its action is clearly evasive, and where, under pretence of a lawful authority, it has assumed to exercise one that is unlawful." See *Bull v. Conroe, supra.* The above quotation is part of a discussion with relation to the powers of the legislature in matters of taxation. In this case there is an attempt to control the effect of the apparent discharge by the legislature of its constitutional duty by adding the referendum clause and providing that the reapportionment shall not be held valid unless and until something happens under the referendum. This is so far from being germane to the real purpose of reapportionment, as a matter of logic and law, as to create two separate, distinct, and conflicting legislative efforts. The proposal of having an advisory referendum on possible amendment of the constitution would in itself be an exercise of general legislative power, certainly not reapportionment power set apart by the constitution.

In the ordinary instance where a nonseparability clause is included in an act, the intent of the legislature controls as to whether the law shall go into effect. But in the case of reapportionment, the legislature's intent that the reapportionment act shall go into effect only upon a contingency is in itself in excess of the power of the legislature.

In *Janesville v. Carpenter, supra,* page 303, we find the following language quoted from Mr. Justice CHASE in *Calder v. Bull,* 3 Dall. (U. S.) *386: " 'I cannot subscribe to the omnipotence of a state legislature, or that it is absolute and without control, although its authority should not be expressly restrained by the constitution or fundamental law of the state. . . . The nature and ends of the legislative power will limit the exercise of it. . . . There are certain vital

principles in our free republican government which will determine and overrule an apparent and flagrant abuse of legislative power,—as to authorize manifest injustice by positive law, . . . An act of the legislature (for I cannot call it a law) contrary to the great first principles of the social compact cannot be considered a rightful exercise of legislative authority.' " It seems to have been agreed among the members of the legislature and by counsel in the argument here that the legislative districts described in secs. 1 and 2 of the act meet all of the constitutional requirements.

Therefore the question is with relation to the effect of secs. 3 and 4. From the history of the efforts with relation to the legislation, it appears that a portion of the legislators were of the opinion that a method of postponing or evading the immediate reapportionment and of holding it in abeyance would result if sec. 3 imposed a condition, whether valid or not, and by providing in sec. 4, in effect, that the reapportionment must be accepted subject to that condition in sec. 3 or given·up. This, it seems to me, under the regulations provided in the constitution, is an untenable proposition.

It seems to me that both secs. 3 and 4 exceed the authority given to the legislature, and any intent attempted to be expressed by those sections is irrelevant.

Secs. 1 and 2, I believe, comply with the constitution.